[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 900 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 901 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 902 
Benjamin McGough and Betty McGough brought this action under the Dram Shop Act, § 6-5-71, Ala. Code 1975, seeking to recover from, among others, G A, Inc., doing business as The Cajun Grille; Peter A. Audie, the president of G 
A, Inc., d/b/a The Cajun Grille; Dirk Swafford, an employee of the Cajun Grille; and Adrienne Kloskin Sheffield, an employee of the Cajun Grille (collectively referred to hereinafter as "the appellees") damages resulting from the death of their adopted son, Jeremy Michael McGough ("Jeremy"). The McGoughs appeal from a summary judgment entered in favor of the appellees on October 11, 2006. We reverse and remand.
 I.
Initially, we note that at the time the trial court entered the summary judgment, two motions remained pending before the trial court: a motion to award attorney fees filed by the appellees pursuant to the Alabama Litigation Accountability Act ("the ALAA"), Ala. Code 1975, § 12-19-270 et seq., and a motion filed by the McGoughs to hold the appellees in contempt for failing to attend mediation.
In Stone v. Haley, 812 So.2d 1245, 1245-46
(Ala.Civ.App. 2001), this court stated:
 "Although neither party has raised the issue whether this court has jurisdiction over this appeal, `jurisdictional matters are of such magnitude that we take notice of them at any time and do so even ex mero motu.' Wallace v. Tee Jays Mfg. Co., 689 So.2d 210 (Ala.Civ.App. 1997) (quoting Nunn v. Baker, 518 So.2d 711 (Ala. 1987)). Ordinarily, only a final judgment will support an appeal. § 12-22-2, Ala. Code 1975. An order that does not dispose of all claims or determine the rights and liabilities of all the *Page 903 
parties to an action is generally not final. Ex parte Harris, 506 So.2d 1003 (Ala.Civ.App. 1987)."
However, one exception to this rule provides that the pendency of a contempt motion does not render a judgment nonfinal.See, e.g., Wileoxen v. Wilcoxen, 907 So.2d 447, 449
n. 1 (Ala.Civ.App. 2005). Our caselaw has also clarified that the failure of a trial court to specifically reserve jurisdiction over an ALAA claim in a summary-judgment order impliedly disposes of the claim and renders the summary judgment final.See Gonzalez, LLC v. DiVincenti 844 So.2d 1196, 1201
(Ala. 2002). Accordingly, we hold that the summary judgment is a final judgment that will support an appeal.
 II.
We next address another issue not raised by the parties — the effectiveness of the notice of appeal that names "Cajun Grille, L.L.C., et al." as the appellees. The McGoughs voluntarily dismissed Cajun Grille, L.L.C., as a defendant by filing a motion on May 5, 2006, which was granted by the trial court on May 11, 2006.[1] The summary judgment from which the McGoughs appeal was entered in favor of the remaining appellees, none of whom are specifically named in the notice of appeal. However, the notice of appeal specifies that the McGoughs are appealing the summary judgment entered on October 12, 2006.[2] Moreover, the McGoughs served the notice of appeal on "Stephen L. Poer, Esq.," counsel for all the named defendants.
While dicta in several cases suggests that a "`notice of appeal from a judgment in favor of two or more parties must specifically name each party whose judgment the appellant wishes to overturn,'" see Veteto v. Swanson Servs.Corp., 886 So.2d 756, 763 (Ala. 2003), and Sperau v.Ford Motor Co., 674 So.2d 24, 40 (Ala. 1995), at least two supreme court cases have clarified that no specific designation of every appellee is necessary when the appellant specifies the judgment from which he or she is appealing. See Edmondsonv. Blakey, 341 So.2d 481 (Ala. 1976); and Threadgill v.Birmingham Bd. of Educ., 407 So.2d 129 (Ala. 1981). InAyers v. Duo-Fast Corp., 779 So.2d 210 (Ala. 2000), the supreme court further held that the failure to designate as an appellee a defendant in whose favor judgment had been entered would be excused when the notice specified the judgment appealed from and appellant's counsel properly served the notice of appeal on counsel for the unnamed appellee.
Following the logic in Edmondson, Threadgill, andAyers, we conclude that the McGoughs' failure to designate G A, Inc., d/b/a The Cajun Grille, Peter A. Audie, Dirk Swafford, and Adrienne Kloskin Sheffield as the appellees did not amount to a significant defect that would render the appeal a nullity. See Ayers,779 So.2d at 214. The McGoughs specified the judgment from which they were appealing and properly served counsel representing all the named defendants. Counsel has filed a brief on behalf of all the appellees. Thus, the technical error has not prejudiced them in any substantive manner. Accordingly, we will consider the merits of the appeal, and we have recast the style of the appeal to reflect the true appellees. *Page 904 
 III. "Our standard of review in a summary judgment case is well settled. The summary judgment was proper if there was no genuine issue of material fact and [the movants] were entitled to a judgment as a matter of law. Rule 56, Ala. R. Civ. P. [The movants] had the burden to make a prima facie showing that no genuine issue of material fact existed and that they were entitled to a judgment as a matter of law. Long v. Jefferson Cty., 623 So.2d 1130, 1132 (Ala. 1993). If [the movants] made that showing, then the burden shifted to [the nonmovant] to present evidence creating a genuine issue of material fact so as to avoid the entry of a judgment against [the nonmovant]. Id. In deciding whether there was a genuine issue of material fact, we view the evidence in the light most favorable to the nonmovant and resolve all reasonable doubts against the movant. Id. The applicable standard of review is the `substantial evidence' rule. § 12-21-12, Ala. Code 1975. `Substantial' evidence' is defined as `evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.' West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala. 1989)."
Duckett v. Wilson Hotel Mgmt. Co., 669 So.2d 977, 978
(Ala.Civ.App. 1995).
 IV.
Before proceeding to a complete recitation of the facts, we must address the admissibility of certain evidence submitted by the McGoughs to the trial court and determine whether that evidence amounted to substantial evidence. See Tanksley v.ProSoft Automation, Inc., 982 So.2d 1046 (Ala. 2007) (holding that on de novo review an appellate court cannot consider inadmissible evidence that should have been stricken by the trial court before ruling on a motion for a summary judgment). Pursuant to Rule 56(e), Ala. R. Civ. P., evidence submitted by a nonmovant in opposition to a motion for a summary judgment must be in a form admissible in evidence — i.e., affidavits must be based on personal knowledge and must contain information that allows more than speculative inferences, and documents must be admissible in evidence as either sworn or certified copies. Chatham v. CSX Transp.,Inc., 613 So.2d 341 (Ala. 1993). The court may not consider deposition or affidavit testimony that directly contradicts earlier deposition or affidavit testimony without adequate explanation. See Continental Eagle Corp. v.Mokrzycki, 611 So.2d 313, 317 (Ala. 1992) (holding that contradictory deposition testimony would be considered when deponent adequately explained conflict).
Under Ala. Code 1975, § 12-21-12(d), once the movant makes a prima facie showing that there is no genuine issue of material fact, the nonmovant must rebut that showing by presenting "`evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.'" Quimby v.Memorial Parks, Inc., 667 So.2d 1353, 1355 (Ala. 1995) (quoting West v. Founders Life Assurance Co. ofFlorida, 547 So.2d 870, 871 (Ala. 1989)). Evidence that consists of mere speculation is not considered substantial evidence that will defeat a motion for summary judgment.Gilmore v. Shell Oil Co., 613 So.2d 1272 (Ala. 1993).
The McGoughs argue that four pieces of evidence create a genuine issue of material fact as to the liability of the appellees under the Dram Shop Act — (1) an excerpt from Betty McGough's deposition in which she claims Sheffield admitted serving alcohol to Jeremy on the date of *Page 905 
the accident; (2) the affidavit of May Darden, a former employee of the Cajun Grille, which is set out in detail below; (3) Sheffield's unsworn statement; and (4) two affidavits signed by Markey Golden, a former employee of the Cajun Grille, which are set out in detail below.[3] The appellees moved to strike that evidence. The trial court did not rule on that motion before entering the summary judgment. Because our review is de novo, we must determine the merits of that motion before considering the merits of the motion for summary judgment. See Tanksley, supra.
 Betty McGough's Deposition
The McGoughs rely on the following excerpt that appears on page 73 of Betty McGough's deposition:
 "Q: . . . Adrienne never said that she served him on that day, either, did she?
 "A: She told me Saturday morning when she brought the coconut cake, she said, I've been wanting to bring it to you, but I haven't had a chance to. And she said, I am sorry that I served Jeremy a drink that day. And I know she was meaning the 16th because she was working that day."
That testimony followed clear and unequivocal testimony to the contrary on pages 23 and 24 of her deposition:
 "Q: Adrienne Sheffield you're saying served Jeremy alcohol?
 "A: She said she did.
 "Q: When?
 "A: After Jeremy had died, she came to my house one day and brought me a coconut cake that her grandmother had made. And she saw Jeremy's picture sitting on his dresser in his room. And she said, you know, Ms. Betty, I hate that I served Jeremy a drink. I said, did you serve him one? She said, yes ma'am, I did, several.
 "Q: When?
 "A: Let me see. Jeremy died May the 16th. Oh, I'd say the 20th or 21st day of May, 2004.
 "Q: Okay. She told you that. Now, did she tell you she served him on the 16th?
 "A: No, sir, she didn't tell me that.
 "Q: There's nobody that you know of that you've talked to yet that says they served Jeremy on the 16th, is there?
 "A: Not actually served him."
(Emphasis added.) In addition, at the conclusion of her deposition, on page 89, Betty testified that she did not know whether Jeremy had helped himself to the alcohol he drank on the date of his accident or whether someone had served him.
When reviewing an excerpt of deposition testimony to determine whether it creates a genuine issue of material fact, this court does not consider it abstractly, independently, and separately from the balance of the deposition testimony. See Malone v.Daugherty, 453 So.2d 721 (Ala. *Page 906 
1984). Rather, this court must consider the context of the testimony as well as the remainder of the deposition testimony in order to determine if the testimony as a whole creates a reasonable inference to support the proponent's position.See Hines v. Armbrester, 477 So.2d 302 (Ala. 1985); and Alabama Power Co. v. Smith, 409 So.2d 760
(Ala. 1982).
Moreover, the deposition testimony as a whole must satisfy the "substantial evidence" standard by carrying "such weight and quality that fair-minded persons in the exercise of impartial judgment [could] reasonably infer the existence of the fact sought to be proved." West v. Founders Life Assurance Co.of Florida, 547 So.2d at 871. See Ala. Code 1975, § 12-21-12. A nonmovant cannot rely on deposition testimony that is internally inconsistent and contradictory to create a genuine issue of material fact. See Caskey v.Colgate-Palmolive Co., 438 F.Supp.2d 954, 975 n. 6 (S.D.Ind. 2006) (citing Buie v. Quad/Graphics, Inc.,366 F.3d 496, 505 n. 5 (7th Cir. 2004), in turn citingUnited States v.1980 Red Ferrari, 827 F.2d 477, 480
n. 3 (9th Cir. 1987)). Deposition testimony may be disregarded at the summary-judgment stage if it is so inconsistent that it could not be believed by any reasonable person. SeeJeffreys v. Rossi 275 F.Supp.2d 463, 476-77
(S.D.N.Y. 2003). Although this rule ordinarily applies when a party submits an affidavit that is inconsistent with prior deposition testimony, it may also be applied to testimony from the same deposition. See Continental Eagle Corp. v.Mokrzycki 611 So.2d at 317 (holding that contradictory deposition testimony would be considered when deponent adequately explained conflict).
In this case, Betty offered no explanation for contradicting her original testimony that Sheffield did not admit that she had served alcohol to Jeremy on the date of the accident. Viewing the deposition as a whole, it appears Betty speculated that Sheffield served Jeremy on the date of the accident. Mere speculation is not sufficient to create a genuine issue of material fact. Kelly v. Panther Creek Plantation,L.L.C., 934 So.2d 1049 (Ala. 2006). No reasonable person in the exercise of impartial judgment could conclude that Sheffield served Jeremy alcoholic beverages on the date of the accident based solely on the excerpt from Betty's deposition testimony cited by the McGoughs.
We hold that the deposition excerpt relied on by the McGoughs does not constitute substantial and admissible evidence that may be considered by this court as tending to prove that Sheffield served alcohol to Jeremy on the date of the accident.
 May Darden's Affidavit
In a July 14, 2006, sworn and notarized affidavit, May Darden deposed as follows:
 "I, May Darden, at 2019 Lake Worth Road, Lake Worth, Florida 33461 do solemnly swear, that I am a former employee of The Cajun Grill and I occasionally worked with the deceased, Jeremy Michael McGough. Further, I swear, that on several occasions, I personally witnessed employees of The Cajun Grill, including Jeremy Michael McGough, consume alcoholic beverages both on and off duty on the premises, without any recourse from any of the managers. Further, I swear, that the managers, specifically, Dirk Swafford, allowed Jeremy Michael McGough to purchase and to have, without paying, a six-pack of beer, only after speaking with Dirk Swafford and getting permission to do so. I personally witnessed this interaction between Jeremy Michael McGough and Dirk Swafford on several occasions. Further, I swear, that employees were allowed to drink on the job so long as they drank their alcoholic *Page 907 
beverages in a Styrofoam cup so that the customers would not be aware of employees drinking on the job. Further, I swear, that on several occasions, I personally observed, Jeremy Michael McGough, go behind the bar and make himself an alcoholic beverage and continue working his shift."
The McGoughs submitted this affidavit in response to the appellees' summary-judgment motion.
The appellees moved to strike Darden's affidavit on the ground of relevancy.[4] In their responsive brief, the appellees argue that the McGoughs bore the burden of proving that the appellees sold, gave, or disposed of alcohol to Jeremy contrary to the law on the date of the accident. See Nelson v.Dunaway, 536 So.2d 955, 956 (Ala.Civ.App. 1988). Hence, they assert, any evidence showing that Jeremy had obtained and consumed alcohol on the premises of the Cajun Grille in the past is not relevant.
"Relevant evidence" is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Rule 401, Ala. R. Evid. Although Darden's affidavit does not tend to prove that the appellees actually sold or gave alcoholic beverages to Jeremy on the date of the accident, the affidavit does establish that the managers of the restaurant had a policy of allowing employees to drink alcoholic beverages on the job. The affidavit further establishes a practice between Swafford and McGough by which McGough was allowed to take six-packs of beer from the restaurant so long as he obtained Swafford's prior express permission. Such evidence would be relevant for the purpose of proving that the appellees had permitted McGough to obtain and consume alcoholic beverages on the date of the accident if other evidence showed that, in fact, Jeremy had obtained and consumed alcohol on the date of the accident consistent with the managers' policy or with the express permission of Swafford, which would be in violation of Alabama law. See Ala. Code 1975, § 28-3A-25(a)(3) ("It shall be unlawful: . . . (3) For any person, licensee, or the board either directly or by the servants, agents, or employees of the same, or for any servant, agent, or employee of the same, to sell, deliver, furnish, or give away alcoholic beverages to any person under the legal drinking age, as defined in Section 28-1-5, [Ala. Code 1975,] or to permit any person under the legal drinking age, as defined in Section 28-1-5, to drink, consume, or possess any alcoholic beverages on any licensee's premises.").
Therefore, we deny the motion to strike Darden's affidavit, and we will consider that affidavit in deciding the merits of the motion for a summary judgment.
 Sheffield's Recorded Statement
In their motion to strike, the appellees argued that a transcript of an alleged recorded statement taken by an investigator for the McGoughs' attorneys should be stricken because it was not authenticated. However, in her deposition, Sheffield affirmed that she had made all the statements in the transcript upon which the McGoughs rely. Under Alabama law, Sheffield's deposition testimony rendered the relevant portions of the recorded statement admissible because her testimony constituted "evidence sufficient to support a finding that the matter in question is what its proponent claims." Rule 901(a), Ala. R. Evid; see also Rule *Page 908 
901(b)(1), Ala. R. Evid., and Byrd v. Bentley,850 So.2d 232 (Ala. 2002) (finding witness properly authenticated tape recording and transcription of tape recording by affirming that the recording and transcription accurately portrayed conversation). Accordingly, we deny the appellees' motion to strike Sheffield's unsworn statement, and we will consider that statement in ruling on the merits of the motion for a summary judgment.
 Markey Golden's Affidavits
Golden testified via affidavit dated May 9, 2006, that he never saw any employee of the restaurant serve Jeremy alcohol during the time that he worked at the restaurant. Golden attested that he did observe Jeremy take alcohol "on his own" when no one else was looking. Golden testified that, on the date of the accident, Jeremy poured himself "one drink in a Styrofoam cup" and that Jeremy later took a six-pack of beer when he left that day. Other than Golden, no one saw him take the alcohol on the date of the accident.
Golden stated in an August 9, 2006, affidavit that throughout his four years of employment at the restaurant, he saw employees drink on and off duty. Golden affirmed that management accepted this practice so long as the employees placed their alcoholic beverages in Styrofoam cups. Golden stated that Jeremy commonly drank alcoholic beverages while working and that his practice was well known to the employees and managers. Golden opined that all of the managers, including Swafford and Sheffield, knew Jeremy drank alcohol on the job and that they did not attempt to stop him. Golden stated that, on the date of the accident, he witnessed Jeremy prepare and consume two vodka and orange juice drinks. Golden opined that Sheffield walked back to the kitchen several times that day and that she knew that Jeremy was drinking on the job. Golden testified that, at 3:30 p.m. on the day of the accident, Jeremy drove Golden home after Jeremy had placed a six-pack of beer from the restaurant in the car. He stated that Sheffield did not object to Jeremy's taking the beer. Golden further testified that he and Jeremy had watched 20 to 30 minutes of a basketball game at Golden's house, and that he did not see Jeremy drink any alcohol after leaving the restaurant.
In an August 15, 2006, affidavit, Golden stated that he never read his May 9, 2006, affidavit before signing it. He maintained that the May 9, 2006, affidavit was incorrect. He claimed that his August 9, 2006, affidavit accurately stated his recollection of the date of the accident.[5]
The appellees moved to strike Golden's August 9, 2006, affidavit on two grounds. The appellees argued that the affidavit included irrelevant evidence regarding the use of alcohol by other employees and speculative opinion statements not based on personal knowledge. The appellees also asserted that the affidavit was a badfaith attempt to recant earlier testimony.
As a general rule, a party may not offer testimony directly contradictory to earlier testimony; however, this rule *Page 909 
does not apply to third-party witnesses who are presumed to have an insufficient interest in the litigation to be motivated to make a sham affidavit. McAlpin v. City of Decatur,628 So.2d 611 (Ala. 1993) (court ruled witness's deposition testimony contradicting earlier affidavit was admissible when witness claimed that the affidavit was prepared by defendant's attorney, he did not read the affidavit before signing it, and he would have signed anything just to get rid of the attorney).[6] "Where a non-party witness gives contradictory testimony, a portion of which is favorable to the nonmovant in a summary judgment context, the trial court must leave to the jury's prerogative the resolution of the factual issue."Parr v. Champion Int'l Corp., 667 So.2d 36, 40
(Ala. 1995). Therefore, we cannot exclude Golden's second affidavit on the ground that it conflicts with his original affidavit.
We agree, however, that much of the second affidavit contains opinions not based on Golden's personal knowledge or his own perception. See Rules 602 701, Ala. R. Evid. Golden states that "it was well known by employees and management [that Jeremy] drank while he worked" and that "[i]t is my opinion that all of the managers at the Cajun Grille, specifically [Swafford and Sheffield,] were aware that Jeremy drank while working, at no time did anyone in management attempt to stop this practice." This opinion is not purported to be based on Golden's observations that Jeremy drank alcohol in front of the other employees and managers such that Jeremy's practice would be well known to them and cause them to take preventive measures. Golden also states, "It is my opinion that [Sheffield] knew that Jeremy was consuming alcohol on [May 16, 2004,] while at work" and that "it is my opinion that [Sheffield] knew that Jeremy was drinking on May 16th." Golden based these opinions solely on the fact that Sheffield walked into the kitchen several times during the work day. However, Golden did not testify that Jeremy drank alcohol while in Sheffield's presence or that he exhibited behavior consistent with alcohol consumption while in Sheffield's presence. Golden also states that Jeremy took a six-pack of beer "with no objection of [Sheffield.]" However, he did not state that Sheffield saw Jeremy take the beer, which would have provoked any objection. Accordingly, this court will not consider those portions of Golden's August 9, 2006, affidavit.
 V.
We also need to address the McGoughs' argument that the trial court erred in failing to require the appellees to produce time cards of all the employees of the Cajun Grille from the date of the accident before ruling on the summary-judgment motion. The McGoughs assert that the time cards are relevant to a determination as to when Jeremy left the restaurant on the date of the accident. The appellees produced the time cards for Jeremy and Golden, which showed that Jeremy clocked out at 2:30 p.m. and that Golden clocked out at 2:45 p.m. The appellees argue that the other time cards are irrelevant because they would not tend to show when Jeremy left the restaurant.
Questions of materiality, relevance, and remoteness of the evidence rest largely with the trial judge, and a trial judge's rulings on such matters must not be disturbed unless the judge has committed a gross abuse of discretion. AmSouth Bank,N.A. v. Spigener, 505 So.2d 1030, *Page 910 
1041 (Ala. 1986). Discovery matters are within the trial court's discretion, and its ruling on those matters will not be reversed absent a showing of an abuse of discretion and substantial harm to the appellant. Ex parte Cryer,814 So.2d 239 (Ala. 2001). We agree with the appellees' argument. The trial court did not abuse its discretion by refusing to order the appellees to produce the requested time cards because those time cards would not tend to prove when Jeremy left the restaurant. They would only prove when the manager clocked him out. Moreover, the McGoughs submitted other evidence, including Golden's affidavit testimony, indicating that the two left the restaurant at 3:30 p.m. to help establish the time line they deem to be crucial to their case. Hence, they have not been prejudiced by the trial court's ruling. See Rule 45, Ala. R.App. P.
 VI.
Excluding the inadmissible and insubstantial evidence, [7] the facts, when viewed in a light most favorable to the McGoughs, indicate that Jeremy, who was born on March 17, 1984, was employed for several years as a cook for the Cajun Grille, a restaurant located in Wetumpka, Alabama. During that time, the managers allowed the employees to drink alcoholic beverages in Styrofoam cups while working. Jeremy commonly drank alcoholic beverages at work. On several occasions, Swafford granted Jeremy express permission to buy or to take six-packs of beer from the restaurant. In addition, Darden observed Jeremy make himself alcoholic beverages at the bar and consume them while working.
Betty McGough testified that Jeremy had an alcohol problem for at least one year before the accident. Sheffield also testified that she knew Jeremy had a drinking problem because she had dated him several years before the accident and he had told her then that he attended Alcoholics Anonymous meetings. Sheffield had also heard that Jeremy drank alcohol while working; however, she never saw him do it because they normally worked different shifts. Jeremy understood that Sheffield disapproved of this behavior, but Sheffield did not report Jeremy because she was not a manager at the time and did not feel it was her responsibility to address a situation she never personally observed. Sheffield testified that she understood that drinking alcoholic beverages on the job was not allowed.
On May 16, 2004, a Sunday, Jeremy worked at the restaurant from 11:00 a.m. until 2:30 p.m., according to his time card. Sheffield was the manager of the restaurant on May 16, 2004. She testified that when Jeremy arrived for work that day, he appeared disheveled and smelled of alcohol but did not appear to be intoxicated. Jeremy told her that he had been out drinking all night. Swafford worked that day as a host from 11:00 a.m. to 1:00 p.m. He did not get close enough to Jeremy to tell if he smelled of alcohol at any time.
Several witnesses verified that Jeremy worked exclusively in the kitchen with Golden and other kitchen workers that day. The kitchen was located near the areas, including the bar, where the restaurant maintained some of its supply of liquor and beer. Because it was a Sunday, the bar was not open and the restaurant was not serving any alcohol or beer to its customers.
Golden's August 9, 2006, affidavit indicates that Jeremy mixed himself two vodka *Page 911 
and orange juice drinks in a Styrofoam cup and consumed those drinks while working. According to Golden's May 9, 2006, affidavit, Jeremy made those drinks while no one other than Golden was looking. No one employed by the restaurant served Jeremy the two drinks or any other alcohol that day.
At some point between 2:45 p.m., when Golden "clocked out," and 3:30 p.m., Jeremy left the restaurant in his automobile with Golden, his coworker. Before leaving, Jeremy obtained a six-pack of beer without anyone other than Golden seeing. There is no evidence indicating that Swafford, who had left approximately two hours earlier, or any other restaurant employee gave Jeremy permission to take the beer that day.
Jeremy drove Golden to Golden's home off Alabama Highway 14 near Eclectic. Jeremy watched a basketball game at Golden's house for 20 to 30 minutes. He then left with the stated intention of driving home. Golden stated in his August 9, 2006, affidavit that he did not observe Jeremy drink any of the beer he took from the restaurant while they were together.
At approximately 4:35 p.m., Jeremy was operating his automobile on Alabama Highway 14. The automobile left the road, traveling at an estimated speed of 55 miles per hour, and collided with a utility pole and an unoccupied automobile. Jeremy died as a result of injuries he received in the accident. An autopsy later revealed his blood-alcohol level to be .208 g/100mL and his urine-alcohol level to be .235 g/100 mL at the time of the accident.
 VII.
Alabama's Dram Shop Act provides, in pertinent part:
 "(a) Every . . . parent . . . who shall be injured in person, property, or means of support by any intoxicated person or in consequence of the intoxication of any person shall have a right of action against any person who shall, by selling, giving, or otherwise disposing of to another, contrary to the provisions of law, any liquors or beverages, cause the intoxication of such person for all damages actually sustained, as well as exemplary damages."
Ala. Code 1975, § 6-5-71. It is undisputed that Jeremy was below the legal drinking age on the date of the accident and that any sale, gift, or disposition of alcohol by the appellees to Jeremy at or before that time would have been unlawful.See Ala. Code 1975, § 28-3A-25(a)(3). By the plain terms of that statute, therefore, the McGoughs have a right to a jury trial on their dramshop claim if substantial evidence shows that the appellees sold, gave, or disposed of alcoholic beverages to Jeremy and that his intoxication from such alcoholic beverages proximately caused his accident.[8]
The appellees lay much emphasis on the fact that the McGoughs presented no evidence indicating that any one, other than himself, actually served Jeremy alcohol on the date in question. However, the Dram Shop Act does not require physical service. Rather, the statute is triggered in any case in which a person unlawfully provides alcohol to a minor that results in the minor's intoxication and proximately causes a covered injury. See Runyans v. Littrell, 850 So.2d 244, 245
(Ala. 2002). Hence, we do not find the mere fact that no one served Jeremy alcohol on the date of the accident to be dispositive of the case. *Page 912 
One reasonable inference to be drawn from the admissible evidence is that during the time Darden worked at the restaurant, the managers condoned Jeremy's on-the-job alcohol consumption. That inference indicates that those managers did more than simply provide an opportunity for Jeremy to take alcohol, but actually permitted his personal use of the restaurant's alcohol. Substantial evidence indicates that on the date of the accident Jeremy acted in accordance with this permission when he poured himself two alcoholic beverages into a Styrofoam cup, the accepted method according to Darden's affidavit.
The McGoughs do not direct our attention to any prior case quite like this one, but we believe that the legislature intended that the Dram Shop Act would impose civil liability in cases in which a licensee of the Alabama Alcoholic Beverage Control Board, acting through its managers, permits an underage employee to consume alcoholic beverages on its premises in violation of § 28-3A-25(a)(3).
The parties have not made any arguments regarding the remaining elements of a Dram Shop Act claim. We note, however, that the issues of whether the consumption of alcohol caused intoxication and whether the intoxication proximately caused injury are questions of fact to be resolved by a jury. SeeAttalla Golf Country Club, Inc. v. Harris,601 So.2d 965 (Ala. 1992).
For the foregoing reasons, we conclude that the trial court erred in entering the summary judgment for the appellees. We therefore reverse the trial court's judgment and remand the case to the trial court to conduct further proceedings consistent with this opinion.
REVERSED AND REMANDED.
THOMPSON, P.J., and BRYAN, J., concur.
PITTMAN and THOMAS, JJ., concur in the result, without writing.
[1] The trial court also granted the McGoughs' motion to voluntarily dismiss David Grantham on May 3, 2006.
[2] The caseaction-summary sheet shows that the only summary judgment entered in the case was entered on October 11, 2006. The reference to an October 12, 2006, judgment is obviously an inadvertent clerical error.
[3] In their principal brief, the McGoughs cite Golden's affidavits at length in their statement of facts, but they do not present any specific argument regarding the statements in the affidavits at any point in that brief. The appellees do not mention those affidavits in their responsive brief. In their reply brief, the McGoughs argue that those affidavits, when coupled with other evidence, create a genuine issue of material fact as to the liability of the appellees under the Dram Shop Act. Ordinarily, we do not consider issues raised for the first time in a reply brief. Davenport v. Hood,814 So.2d 268 (Ala.Civ.App. 2000). In this case, however, the McGoughs relied extensively on Golden's affidavits at the trial-court level and their recitation of his affidavit testimony in their statement of facts in their principal brief alerted the appellees that they would continue to rely on that evidence. The reply brief does not raise any newissue; it simply reasserts the same arguments
presented at the trial-court level are directed toward the issue raised in the principal brief — whether the trial court erred in entering the summary judgment.
[4] The appellees also moved to strike the affidavit on the ground of hearsay, but they make no hearsay argument on appeal.
[5] The May 9, 2006, affidavit was sworn and notarized by Stephen L. Poer, the appellees' attorney. The McGoughs subsequently moved to disqualify Poer when Golden recanted this affidavit testimony. In response, Poer produced a transcript of a tape recording of Golden's statement. The transcript indicates that the May 9, 2006, affidavit accurately summarized Golden's statement and that he signed the May 9, 2006, affidavit only after Poer had read the affidavit to him verbatim and Golden had sworn that the affidavit was accurate. The trial court did not rule on the motion to disqualify Poer before entering the summary judgment for the appellees.
[6] Some federal courts have held that the general rule applies to a nonparty's affidavit as well. See, e.g.,Adelman-Tremblay v. Jewel Cos., 859 F.2d 517 (7th Cir. 1988); Garnac Grain Co. v. Blackley, 932 F.2d 1563
(8th Cir. 1991).
[7] We also do not consider any evidence the McGoughs do not cite in their appellate briefs, such as the affidavits of Lt. Dennis Hill and Jack R. Kalin, Ph.D., and Darden's unsworn statement to the McGoughs' investigator.
[8] The McGoughs do not argue that the appellees failed to carry their burden of proving a prima facie case of nonliability.