On Applications for Rehearing

PER CURIAM.
The opinion of August 9, 2013, is withdrawn and the following is substituted therefor.
In appeal no. 2120295, Shirley Hines appeals from an order of the Jefferson Circuit Court (“the trial court”) granting a motion for a summary judgment filed by Trinity Contractors, Inc. (“Trinity”), against her in case no. CV-10-741. In appeal no. 2120296, Scotty Kelley appeals from an order of the trial court granting a motion for a summary judgment filed by Trinity against him in case no. CV-10-901231, which had been consolidated with case no. CV-10-741.

Factual Background and Procedural History

Both of these appeals stem from complaints arising out of an automobile accident that occurred on June 1, 2009. The following facts are undisputed. On June 1, 2009, at approximately 7:00 a.m., Hines was traveling on Interstate 59 near Fair-field, outside Birmingham, where two lanes in each direction are separated by a median. Hines was traveling northbound in the left lane next to the median when she lost control of her vehicle, causing it to go down into the median and back up into oncoming traffic in a southbound lane. Upon entering the southbound lane, Hines’s vehicle struck a black pickup truck that was being driven by Kelley, which was catapulted and then hit by an 18-wheel tractor-trailer truck that was being driven by Marshall Kelly Cummings and was owned by Southern Haulers, LLC.
Hines filed a complaint, which was assigned case no. CV-10-741, on March 9, 2010, alleging that a vehicle that belonged to Trinity had caused her vehicle to travel off the road and into the median. Hines asserted claims of negligence and wantonness against Trinity and a number of fictitiously named defendants, and she asserted a claim for uninsured- and un-derinsured-motorist coverage against Farmers Insurance Exchange, with whom Hines had a policy of automobile insurance at the time of the accident. Farmers and Trinity filed separate answers to Hines’s complaint.
*1016 On April 13, 2010, Southern Haulers filed a complaint asserting claims of negligence and wantonness against Hines, Trinity, and a number of fictitiously named defendants and claims of “negligent and/or wanton entrustment” and “negligence and/or wantonness respondeat superior and/or common law agency and/or vicarious liability” against certain fictitiously named defendants; that complaint was assigned case no. CV-10-901231. Hines and Trinity filed separate answers to Southern Haulers’ complaint. Trinity subsequently filed a motion requesting that the trial court consolidate case no. CV-10-741 and case no. CV-10-901231 for the purposes of discovery and trial; the trial court granted that motion. Southern Haulers later amended its complaint to add Kelley as a defendant. Kelley filed a cross-claim against Trinity and a number of fictitiously named defendants, asserting claims of negligence and wantonness. Trinity filed an answer to Kelley’s cross-claim.
On May 16, 2011, Hines filed in case no. CV-10-901231 a motion for a summary judgment as to all claims asserted against her by Southern Haulers in that action. On June 17, 2011, the trial court entered an order in case no. CV-10-901231 granting Hines’s summary-judgment motion as to the claims of negligence and wantonness asserted against her by Southern Haulers. Additionally, having granted Hines’s summary-judgment motion, the trial court dismissed all claims that had been asserted against Hines in Southern Haulers’ complaint.
Southern Haulers and Kelley filed a joint stipulation for dismissal in case no. CV-10-901231, agreeing to dismiss Southern Haulers’ claims against Kelley; the trial court, pursuant to that stipulation, dismissed Southern Haulers’ claims against Kelléy. On January 26, 2012, Kelley and Hines filed a joint motion to realign the parties, and the trial court granted the joint motion, realigning Kelley and Hines as plaintiffs with Southern Haulers.
On August 15, 2012, Trinity filed in each action a motion for a summary judgment as to all claims asserted against it. The trial court entered an order in each action on November 6, 2012, granting Trinity’s motion for a summary judgment on all claims asserted against Trinity. In both of those orders, the trial court directed the entry of a final judgment, pursuant to Rule 54(b), Ala. R. Civ. P. Hines and Kelley each filed timely notices of appeal to the supreme court; that court transferred the appeals to this court, pursuant to Ala.Code 1975, § 12-2-7(6), and this court consolidated the appeals, ex mero motu.

Discussion

An appellate court’s review of a summary judgment is well settled.
“We review a summary judgment de novo. American Liberty Ins. Co. v. AmSouth Bank, 825 So.2d 786 (Ala. 2002).
“ ‘We apply the same standard of review the trial court used in determining whether the evidence presented to the trial court created a genuine issue of material fact. Once a party moving for a summary judgment establishes that no genuine issue of material fact exists, the burden shifts to the non-movant to present substantial evidence creating a genuine issue of material fact. “Substantial evidence” is “evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.” In reviewing a summary judgment, we view the evidence in the light most favorable to the nonmovant and entertain such reasonable inferences as the jury would have been free to draw.’
*1017 “Nationwide Prop. & Cas. Ins. Co.[ v. DPF Architects, P.C.], 792 So.2d [369] at 372 [ (Ala.2000) ] (citations omitted), quoted in American Liberty Ins. Co., 825 So.2d at 790.”
Potter v. First Real Estate Co., 844 So.2d 540, 545 (Ala.2002).
Trinity attached a number of exhibits to its summary-judgment motion. One of those exhibits was the June 28, 2010, deposition of Chari Dickson-Fikes, who testified that, at the time of the accident, she was driving in a vehicle following Hines’s vehicle, that a white truck in the right lane “got over on [Hines],” and that, as a result, Hines’s vehicle had swerved into the median and onto the other side of the interstate.[1] She stated that the majority of the truck was white but that she had noticed blue letters on the door of the truck. Dickson-Fikes testified that she saw only the left side of the truck and that she did not remember what was written on the truck. She stated that the driver of the truck was a white male with a short haircut. Dickson-Fikes testified that the truck that had swerved near Hines did not stay at the scene of the accident.
In support of its summary-judgment motion, Trinity also submitted an affidavit executed by Hines on July 21, 2009; Hines had submitted that affidavit to her insurer in support of her request for uninsured-motorist insurance benefits. Hines testified in her July 21, 2009, affidavit, in pertinent part:
“The party that put the events in motion regarding this accident was a phantom vehicle that forced me off the inside lane of the Interstate into the median where I lost control of by vehicle.... The vehicle that forced me off the highway was a rather large truck, similar to the ones you see Alabama Power use, which was white with blue writing on the side. That was all I was able to see prior to being forced off [the road] by it.”
Trinity also attached portions of the transcript of Hines’s December 1, 2010, deposition testimony to its summary-judgment motion. In her deposition, Hines testified that, after the accident, a white male, who, she said, was about “five foot to five foot, two inches tall,” had salt and pepper hair, and was wearing a navy-blue work uniform with a nametag, was speaking with someone in the crowd and that she had believed he was the driver of the white truck because of the things he was saying.
Hines also testified in her December 1, 2010, deposition that she could see the writing on the truck when it swerved near her and that the name “Trinity Contractors” was on the truck. She stated that the truck was white and that the lettering “was in like a round circle. The blue was there and the word ‘Trinity Contractors.’ ” She stated that the writing was on the driver’s side door and that the truck was “kind of like a utility truck.” She stated that there were toolboxes on the side of the truck with a hatch.
Hines also testified in her deposition that she had been talking about the accident with her daughter when she first mentioned that the truck was a Trinity truck and that she had immediately contacted her attorney at that time. She stated that her children had continued to ask her things so that she “could try to rehash and remember what [had] happened.” Hines testified during her December 1, 2010, deposition that it was one or two weeks after the June 1, 2009, acci *1018 dent when she had recalled that it was a Trinity truck that had forced her from the roadway.
Trinity also attached excerpts of the transcript of Eugene C. Jones’s deposition to its summary-judgment motion. Jones, the president of Trinity, testified in his deposition that Trinity’s trucks are white and that the lettering on the trucks is royal blue and light blue, with the “C” in “Contractors” overlaid on the “T” of Trinity. He testified that nine Trinity trucks would fall within Hines’s description of the truck that ran her off the road and that all nine were white with blue lettering on the door. Jones testified that, on the morning of the accident, the majority of Trinity’s workers were signed in at a service meeting at Trinity’s office. With regard to trucks assigned to a specific job site, Jones stated that Trinity typically has sign-in sheets that workers sign indicating the time they report to the sites. He testified that the keys to the trucks that are not assigned to a worker are kept in a lock box and that the unassigned trucks are kept in the yard at Trinity’s office. Jones stated that, on the day of the accident, two of the trucks that matched Hines’s description were located at Trinity’s job site at the north pavilion of the University of Alabama at Birmingham (“UAB”); he stated that one was being driven by Keith Jones and the other by Michael Bearden. He stated that there were no sign-in sheets for the UAB job site. He stated that the workers who drive utility trucks that are assigned to job sites are allowed to take the trucks home and to drive the trucks directly to the job site from their homes.[2] He testified that those workers are not supposed to use the trucks for personal use. Eugene Jones stated that the workers have the option of wearing a Trinity t-shirt, but, he said, the t-shirts do not have name tags on them.
Trinity also attached the affidavit of Aimee Jones (“Aimee”), the Service Group Office Manger for Trinity. In her affidavit, Aimee stated that she was responsible for dispatching Trinity employees who are assigned company-owned vehicles from 6:00 a.m. to 7:80 a.m., Monday through Friday. According to Aimee, on the date of the accident, Trinity owned 81 company vehicles and only 9 of those vehicles “are remotely similar to the description of the subject ‘phantom vehicle’” described by Hines. She stated that the words “Trinity Contractors” appear in blue lettering on the side of those nine vehicles. Aimee stated that, on the morning of the accident, six of the nine vehicles were parked at the site of Trinity’s office, two were at Trinity’s job site at UAB, and one was located at a job site at Gardendale High School. According to Aimee, none of the nine vehicles had been in the vicinity of Interstate 59 near Fairfield at any point around the time of the accident at 7:15 a.m. Finally, Aimee stated in her affidavit that, on the date of the accident, Trinity did not have any employee whose appearance would have been even remotely similar to the driver of the vehicle as described by Hines in her deposition.
Trinity also submitted excerpts of the transcript of Marshall Kelly Cummings’s deposition testimony. Cummings, who was traveling in the southbound lane at the time of the accident, testified that he had seen Hines’s vehicle swerve but that he had not seen a phantom vehicle cause *1019 her to swerve. He stated that he “saw the whole thing happen” and that “there wasn’t a phantom vehicle there.”
Hines and Kelley filed oppositions to Trinity’s summary-judgment motion; Southern Haulers filed a motion' joining Hines’s and Kelley’s oppositions to the summary-judgment motion. Along with her opposition, Hines filed a September 11, 2012, affidavit in which she attempted to explain the discrepancy in her explanations regarding when she claims to have recalled the name “Trinity Contractors” on the side of the truck that she claims caused the accident. In her July 21, 2009, affidavit originally submitted to her insurance company, Hines testified that she could not recall the name of the company written on the side of the white truck that had caused her vehicle to travel into the median. In both her deposition and her September 11, 2012, affidavit, Hines stated that, following the accident, she could see the image and writing in her head but that she could not initially recall what the writing had said. In her December 1, 2010, deposition, Hines testified that she recalled the name “Trinity Contractors” approximately a week or two after the June 1, 2009, accident. Hines stated in her September 11, 2012, affidavit that, after discussing the accident with her family and replaying it in her head, she had recalled the name on the side of the truck as “Trinity Contractors.” In the September 11, 2012, affidavit, Hines stated that the conversation with her family that caused her to recall the Trinity logo on the side of the truck “occurred between a few weeks after the wreck to several months after the wreck.” In her September 11, 2012, affidavit, Hines did not address her deposition testimony that she had recalled the name “Trinity Contractors” within a week or two of the accident.
In its November 6, 2012, summary-judgment orders, the trial court made the following pertinent conclusions, among others:
“The Court heard oral arguments of the parties on September 14, 2012 and has reviewed the evidence and finds that Trinity has presented a prima facie case in that it had no vehicle nor employees within miles of the scene of the accident at the time that it occurred. The Court further finds that [Hines and Kelley] have failed to present substantial evidence that Trinity Contractors either owned the vehicle which has been described as a ‘phantom vehicle’ or employed the driver of the so called ‘phantom vehicle.’
“Thus, the Court finds that the summary judgment [motion] of Trinity Contractors is well taken as it relates to the identity of the ‘actor’ of the events causing a chain reaction beginning with the plaintiff, Shirley Hines. The Court specifically notes that it has not been called upon nor does it pass judgment as to the ‘actions’ of the parties (i.e., the Court is making no finding as to the existence of negligence, contributory negligence, proximate cause, sudden emergency or other such legal conclusion).
“The Court notes that Trinity’s summary judgment motion is based upon the testimony of the plaintiff Shirley Hines, the testimony of the plaintiff, Scotty Kelley, the testimony of [Marshall Kelly] Cummings, the driver for the plaintiff Southern Haulers, as well as testimony of the independent witness, Ms. Chari Dickson-Fikes. Despite the presence of all four individuals in the immediate vicinity of the accident, none of them identified the phantom vehicle as having the company insignia and/or logo of Trinity Contractors. Rather, at most, the only description of the vehicle gleaned from these witnesses is that it was a white, open bed truck, commonly *1020 referred to by the parties as a ‘utility’ truck.
“The only ‘evidence’ establishing an association of Trinity Contractors with the phantom vehicle is the deposition testimony of the Plaintiff, Shirley Hines, given some eighteen months after the accident. A complete reading of her deposition indicates that her recollection was equivocal, at best. Moreover, the Court would note that Ms. Hines presented a sworn affidavit to her automobile insurer in pursuit of a claim of uninsured motorist benefits in which she described the vehicle only as a phantom vehicle.
“Specifically, this original Affidavit dated July 21, 2009, states, in pertinent part, as follows:
“ ‘The party that put the events in motion regarding this accident, was a phantom vehicle that forced me off the inside lane of the interstate into the median where I lost control of by (sic) vehicle.
[[Image here]]
“ ‘The vehicle that forced me off the highway was a rather large truck, similar to the ones you see Alabama Power use, which was white with blue writing on the side. That was all I was able to see prior to being forced off by it.’
“(Exhibit ‘B’ to Trinity’s Motion for Summary Judgment) (Emphasis added). Somewhat in contrast to this Affidavit, Ms. Hines has submitted another Affidavit specifically to oppose this summary judgment, in which she states, in pertinent part, as follows:
“ ‘4. In July, 2009, by Affidavit, I stated that the truck that ran me off the road was a white truck with blue lettering, but at that time, I could not recall specifically the name of the company written on the side of the truck, even though I saw it on the day of the wreck.
“‘5. Unfortunately, at the time I signed the Affidavit, I could not recall the name on the truck.
“ ‘6. I could see the image in writing in my head, but I could not initially recall what the writing said.
“ ‘7. Even though I saw the lettering and the words on the side of the truck, I could not recall what the words said.
“ ‘8. The wreck was very traumatic and severe. As a result of that trauma, I could not at first recall the name on the truck.’
“(Affidavit of Shirley Hines dated September 11, 2012, filed as Exhibit 6 in Opposition to Trinity’s Motion for Summary Judgment). The Court notes that Ms. Hines’ Affidavit dated July 21, 2009, some seven weeks after the subject accident was submitted to her automobile insurer in support of her claim for uninsured motorist benefits. In any event, it is undisputed that the deposition testimony of Ms. Hines is the only ‘evidence’ linking Trinity Contractors to the phantom vehicle. Unrebutted by [Hines and Kelley] is [Trinity’s] evidence establishing the following:
“1. Trinity Contractors has but one location which is located in Truss-ville, Alabama, many miles north of the accident site;
“2. All but three of Trinity’s vehicles were at a safety meeting at Trinity’s location from 7:00 a.m. to 7:30 a.m. while the accident occurred at approximately 7:00 a.m. to 7:15 a.m.;
“3. There are no Trinity employees who live within the vicinity of the accident area such that they could be expected to be traveling in a Trinity vehicle towards work (although they *1021 would have been late for work as Trinity’s safety meeting began at 7:00 a.m.);
“4. Trinity had but four jobs ongoing at the time of the accident but none of these was located anywhere close to where the accident occurred;
“5. The three Trinity vehicles which were not present at Trinity’s location for its safety meeting on the morning of the accident were all located at the ‘North Pavilion Job’ on UAB’s campus in downtown Birmingham; and
“6. Color photos of the Trinity Contractors’ vehicles shows a variety of vehicles ranging from pick-up trucks to vans to utility trucks and all of these have the name Trinity Contractors prominently displayed on the sides and backs of the vehicles.
“Therefore, the totality of the evidence overwhelmingly indicates that the phantom vehicle was not a Trinity Contractors vehicle. The subsequent ‘memory’ of Shirley Hines would, at most, constitute only a scintilla of evidence but cannot reasonably be deemed to constitute substantial evidence for which this case should proceed to trial.”
Both Hines and Kelley argued on appeal that the tidal court erred in entering a summary judgment in favor of Trinity. Neither Hines nor Kelley asserts that the trial court erred in concluding that Trinity made a prima facie showing that none of its trucks were in the vicinity of the accident site on the morning of the accident. Rather, Hines and Kelley each argue that Hines’s testimony in her deposition created a genuine issue of material fact that a vehicle owned by Trinity was the “phantom vehicle” that caused the accident.
Trinity argues, however, that Hines and Kelley cannot create an issue of fact with Hines’s December 1, 2010, deposition testimony, because, Trinity argues, that testimony directly contradicts Hines’s earlier, July 21, 2009, affidavit testimony in which Hines stated that all she had seen was that the truck was large, white, and had blue writing. Trinity cites McGough v. G & A, Inc., 999 So.2d 898, 904 (Ala.Civ.App.2007), and Tittle v. Alabama Power Co., 570 So.2d 601, 604 (Ala.1990), among other cases, in support of its argument. In McGough, this court stated that “[t]he court may not consider deposition or affidavit testimony that directly contradicts earlier deposition or affidavit testimony without adequate explanation.” 999 So.2d at 904 (emphasis added). Likewise, in Tittle, the Alabama Supreme Court determined that when seemingly inconsistent testimony has been clarified or read in context to reveal its consistency, the later testimony is, in fact, admissible. 570 So.2d at 604-05. Our supreme court has explained:
“It is well settled that ‘ “a party is not allowed to directly contradict prior sworn testimony to avoid the entry of a summary judgment.” ’ Wilson v. Teng, 786 So.2d 485, 497 (Ala.2000) (quoting Continental Eagle Corp. v. Mokrzycki, 611 So.2d 313, 317 (Ala.1992)). The basis for this rule is to prevent the introduction of a sham affidavit into judicial proceedings. Tittle v. Alabama Power Co., 570 So.2d 601, 604 (Ala.1990). Thus,
“ ‘ “ ‘[w]hen a party has given clear answers to unambiguous questions which negate the existence of any genuine issue of material fact, that party cannot thereafter create such an issue with an affidavit that merely contradicts, without explanation, previously given clear testimony.’ ” [Continental Eagle Corp. v. Mokrzycki, 611 So.2d 313, 317 (Ala.1992) ], quoting Robinson v. Hank Roberts, Inc., 514 So.2d *1022 958, 961 (Ala.1987). However, when a party submits a subsequent affidavit merely to clarify his or her answers to ambiguous questions asked by counsel during a deposition or other prior sworn proceeding or to supply information not necessarily sought by questions asked at the deposition or other prior sworn proceeding, the trial court should consider the subsequent affidavit. See, e:g. Rickard v. Shoals Distrib., Inc., 645 So.2d 1378, 1382-83 (Ala.1994); and Tittle v. Alabama Power Co., 570 So.2d 601, 606-07 (Ala. 1990).’
“Wilson, 786 So.2d at 497.”
Prince v. Poole, 935 So.2d 431, 452 (Ala. 2006).
In Hines’s first, July 21, 2009, affidavit, she testified that blue writing on the side of a white truck of the type Alabama Power uses “was all [she] was able to see prior to being forced off [the road]” by what she also referred to in that affidavit as a “phantom vehicle.” In her December 1, 2010, deposition testimony, Hines testified that “I could see the writing” and that it said ‘“Trinity Contractors.”’ Later in that deposition, Hines stated that she first remembered the name on the side of the truck approximately a week or two after the accident, while she was speaking with her daughter.[3]
In her September 11, 2012, affidavit, Hines again stated that, after discussions with her family, she recalled that the blue lettering on the white truck that she claims ran her off the road said “Trinity Contractors.” In that September 11, 2012, affidavit, Hines testified that the conversations with her family that caused her to recall the name “Trinity Contractors” on the truck “occurred between a few weeks after the wreck to several months after the wreck before I was able to recall the name on the truck.” Hines stated in her September 11, 2012, affidavit that she could not recall the name on the side of the truck at the time she executed her July 21, 2009, affidavit but that she had recalled the name on the truck by the time she filed her action on March 9, 2010, and by the time she testified in her December 1, 2010, deposition.
We conclude that Hines’s December 1, 2010, deposition testimony contradicted her earlier, July 21, 2009, affidavit testimony. In her July 21, 2009, affidavit, Hines stated that the vehicle that allegedly caused her to run off the road was a “phantom vehicle” and that she was able to discern only blue lettering on the door of the truck, which was white, before the *1023 accident occurred. It is undisputed that Hines submitted the July 21, 2009, affidavit to her insurer to recover benefits for damage or injury caused by an unknown, motorist. In her December 1, 2010, deposition, Hines stated that she could see the name “Trinity Contractors” on the side of the truck. Hines argues that her testimony in her December 1, 2010, deposition and in her September 11, 2012, affidavit clarified or explained her earlier, July 21, 2009, affidavit testimony that she could not recall the name on the side of the truck that allegedly forced her off the road. See Prince v. Poole, supra. We cannot agree that Hines and Kelley have demonstrated that Hines’s testimony in her deposition and in her September 11, 2012, affidavit clarified or explained her initial inability to recall more than seeing blue lettering on a white truck.
Further, in her December 1, 2010, deposition, Hines testified that she recalled the name “Trinity Contractors” on the side of the truck -within one to two weeks following the June 1, 2009, accident. Accordingly, Hines would have known at the time she executed the July 21, 2009, affidavit in support of her claim for uninsured-motorist insurance benefits the name on the side of the truck and, therefore, Trinity’s identity. Also, Hines’s September 11, 2012, affidavit states only that she recalled Trinity’s name on the truck sometime “between a few weeks after the wreck to several months after the wreck,” and she testified that she did not recall Trinity’s name on the side of the truck at the time she executed the July 21, 2009, affidavit. In her September 11, 2012, affidavit, Hines did not address or attempt to explain the inconsistencies in her statements regarding the timing of her recollection of Trinity’s name on the side of the truck. Accordingly, we conclude that Hines’s explanation of her recollection of Trinity’s name on the side of the truck was not sufficient to nullify the contradiction in her earlier testimony and that Hines failed to offer any explanation of the contradiction in her testimony pertaining to the timing of that recollection.
Trinity presented a prima facie case that none of its trucks were in the vicinity of the accident on June 1, 2009. Hines’s and Kelley’s evidence in opposition to that pri-ma facie case contradicted itself without adequate explanation. Accordingly, we agree with the trial court that Hines and Kelley failed to present substantial evidence to create a genuine issue of material fact such that a summary judgment in favor of Trinity was inappropriate.
We note that, in his brief on appeal, Kelley argues that, in reaching its summary judgment, the trial court impermissi-bly resolved issues pertaining to the parties’ credibility. See Dixon v. Board of Water & Sewer Comm’rs of City of Mobile, 865 So.2d 1161, 1166 n. 2 (Ala.2008) (“It goes without saying that ‘ “ ‘a court may not determine the credibility of witnesses on a motion for summary judgment.’ ” ’ Wilson v. Teng, 786 So.2d 485, 498 (Ala. 2000) (quoting Ex parte Usrey, 777 So.2d 66, 68 (Ala.2000), quoting in turn Phillips v. Wayne’s Pest Control Co., 623 So.2d 1099, 1102 (Ala.1993)).”). Specifically, Kelley contends that the trial court improperly determined that Hines’s deposition testimony that she recalled seeing the “Trinity Contractors” name on the side of the truck was not credible. However, as is explained above, Hines’s testimony in her deposition, which Kelley contends created a genuine issue of material fact, contradicted her earlier testimony without adequate explanation. Accordingly, we cannot agree that the trial court impermissibly weighed the parties’ credibility in entering its summary-judgment orders.
*1024 Both Hines and Kelley contend that the trial court erred in entering a summary judgment in favor of Trinity because, they maintain, Hines’s deposition testimony created a question of fact regarding whether a vehicle owned by Trinity caused Hines to swerve off the road. However, as is discussed above, the trial court properly disregarded that testimony because it contradicted, without adequate explanation, Hines’s earlier sworn testimony. Hines and Kelley did not submit any other, “substantial and admissible evidence” that could be said to create a genuine issue of material fact sufficient to defeat Trinity’s properly supported summary-judgment motion. McGough, 999 So.2d at 906. Accordingly, we affirm the November 6, 2012, summary judgments in favor of Trinity.
2120295 — APPLICATION GRANTED; OPINION OF AUGUST 9, 2013, WITHDRAWN; OPINION SUBSTITUTED; AFFIRMED.
2120296 — APPLICATION GRANTED; OPINION OF AUGUST 9, 2013, WITHDRAWN; OPINION SUBSTITUTED; AFFIRMED.
THOMPSON, P.J., and MOORE and DONALDSON, JJ., concur.
PITTMAN, J., concurs in the rationale in part and concurs in the result, with writing, which THOMAS, J., joins.

. Trinity also submitted a statement signed by Dickson-Fikes that the parties referred to as an "affidavit,” although that statement was not sworn. Dickson-Fikes's signed statement is consistent with her sworn deposition testimony.

. Trinity also presented evidence indicating that Keith Jones's home is in Trussville and that Bearden's home is in Moody, both of which are on the northeast side of Birmingham and northeast of the UAB job site to which they were assigned; the accident occurred southwest of the UAB job site, and, at the time of the accident, Hines’s vehicle and the white truck were traveling in the traffic lanes heading northeast.

. The relevant portion of Hines’s December 1, 2010, deposition testimony is as follows:
“Q. After the accident, who was the first person that you told that this white truck was a Trinity Contractors truck?
"A. When I realized it was an accident, my — -that I don’t know. I think my daughter might have been the first person I told.
“Q. Your daughter?
"A. Yes.
“Q. Which daughter?
"A. My baby daughter, Brandy. We was [sic] talking about the accident and I think she may have been the first one ■ I mentioned it to and I called my attorney.
[[Image here]]
"Q. ... Was there something that jogged your memory? Did you see a Trinity Contractors truck and think that looks like the truck that ran me off the road or did you see a commercial or was there something that specifically jogged your memory?
“A. No, it was just — we had rehashed it. My kids kept going back — my kids kept going back and asking me things so that I could try to rehash and remember what happened.
"Q. How long after the accident was that rehashing?
“A. I don't exactly remember; maybe a week or two weeks. They would ask me all the time.”