314 So.2d 836

**MID-STATE HOMES, INC., a corporation**

**v.**

**James Dee BROWN et al.**

**SC 1066.**

Supreme Court of Alabama.

May 22, 1975.

Rehearing Denied July 10, 1975.

R. A. Norred, Birmingham, for appellant.

EMBRY, Justice.

This is an appeal from judgment on a jury verdict in behalf of defendants Brown. The action was one of statutory ejectment brought by Mid-State Homes, Inc. seeking to recover real estate; a residence and the lot on which it was situated.

The issues were framed by pretrial order, the pertinent portions of which are found in paragraph three thereof:

"3. Position of the parties.

A. Plaintiff contends: That the defendants, on March 25, 1968, executed a mortgage conveying the real estate described in the complaint as amended to Jim Walter Corporation, the same being recorded in Book 420, Page 349, Office of the Judge of Probate of Jackson County, Alabama; that said mortgage was thereafter assigned to the plaintiff by Jim Walter Corporation by instrument recorded in Book 003, Page 500, Office of the Judge of Probate of Jackson County, Alabama, and that upon default in the payment of the indebtedness secured

by said mortgage, said mortgage was duly and regularly foreclosed, which said foreclosure is evidenced by that certain foreclosure deed recorded in Book 227, Page 08 in the Office of the Judge of Probate of Jackson County Alabama, and that the plaintiff has legal title to and is immediately entitled to the possession of the real estate described in the complaint.

B.1. Defendants contend: That plaintiff does not have legal title to the property described in the amended complaint and does not have such title thereto to entitle it to sue for said property nor for the possession thereof, nor to entitle it to a judgment therefor against these defendants.

B.2. That they admit that they executed the mortgage recorded in Book 420 at Page 349 and admit same was assigned to the plaintiff by instrument recorded in Book 003, Page 500, but deny that said assignment was sufficient to enable plaintiff to maintain this suit. They admit that there was an attempted or purported foreclosure of said mortgage, and, in connection therewith, the foreclosure deed in Book 227 at Page 08 was executed. The defendants contend, however, that thereafter and on or about, to-wit, April 8, 1970, the defendants did enter into a negotiation with the plaintiff for the settlement of the mortgage and the entire debt which the above referred to mortgage secured and of said purported foreclosure thereof and did reach an agreement or an accord and satisfaction thereof, wherein and whereby the plaintiff did agree with the defendants that if the defendants would promise to pay to the plaintiff Six Thousand Eight Hundred Eleven and 20/100 Dollars ($6,811.20), and would execute to the plaintiff a note and real

estate mortgage in said amount that the plaintiff would re-convey the property described in said original mortgage to the defendants and would take said mortgage in full accord and satisfaction of said original mortgage and the foreclosure thereof, and the defendants did carry out the said agreement and did execute such mortgage and note on April 20, 1970, and the plaintiff did accept same as an accord and satisfaction of said original mortgage, note, and foreclosure. That thereafter the plaintiff confined its remedy to the new agreement and upon the claim that there would be a new performance of the new agreement, and plaintiff has so treated same from that date to the date of filing the amended complaint in this cause and thereby the plaintiff is estopped and cut off from claiming title to the property described in the amended complaint by and through said original mortgage and the foreclosure thereof."

The ten assignments of error present for review the question: Did the defense to the action stated in the pretrial order, under the evidence, legally suffice to defeat recovery of the real estate from the Browns by Mid-State? We hold that it did and affirm.

March 25, 1968, James and Glenda Brown executed a promissory note payable to Jim Walter Corporation in the amount of $7,603.20 payable in 144 installments of $52.80 per month, secured by mortgage of the same date on property described as:

"Lot No. 11, Block B of the Lee Radley [sic] Subdivision No. 1 to the town of Scottsboro according to the map or plat of said Subdivision as recorded in plat book "A" Page 176 in the office of the judge of probate of Jackson County, Alabama, and being a part of that property as described in Volume 198 page 673 of the deed records of Jackson County, Ala."

That mortgage was assigned to Mid-State April 12, 1968. On January 28, 1970, the mortgage was foreclosed and deed of foreclosure executed conveying the property to Mid-State. At time of filing of this action the Browns were in possession. These facts were developed by plaintiff, Mid-State, after which it rested. A prima facie case was thereby made. *Atlas Subsidiaries of Florida, Inc.* v. *Kornegay,* 288 Ala. 599, 264 So.2d 158.

Defendants Brown did not controvert the evidence of Mid-State. They proceeded with their affirmative defense of accord and satisfaction, contending that such defense estopped Mid-State from maintaining this action to recover the real estate. That defense arose from these facts: Subsequent to foreclosure, negotiations between the Browns and Mid-State culminated in the execution, on April 20, 1970, of a "new" mortgage by the Browns securing payment of an obligation to Mid-State in the amount of $6,811.20 payable in monthly installments of $58.20. Contemporaneously Mid-State gave a quit claim deed to the Browns dated April 8, 1970.

Mr. Brown testified about this mortgage and circumstances surrounding its execution:

"Q  What was said by this Mr. Andrews about what effect the execution of these papers that you have testified that you and your wife executed would have on the foreclosure made?

"A  He said that it would start over new and that would be over with.

"Q  That would be over with?

"A  Yes, sir.

On cross examination Brown testified:

"Q  Was there any argument or dispute about what you owed?

"A  None that I knew of.

"Q  Wasn't it your understanding in that conversation that this so-called new

mortgage was security for the old debt for the house?

"A   Would you repeat the question?

"Q   Was it your understanding that this new mortgage was to be security payment to that old debt, the contract price of the house?

"A   Yes, sir."

■   The "new" mortgage and the quit claim deed to which we are referring described the property as Lot 11, Block "A" rather than Block "B." Under these facts Mid-State claims that the quit claim deed and the "new" mortgage are void, describing property that does not exist, therefore lacking certainty of description, and concludes that the concept of accord and satisfaction in order to defeat recovery must divest it of legal title and that such divestment cannot be effected by the void instruments. There is no dispute that the Lee Ridley Subdivision contains no Lot 11 in Block "A."

The description, Lot 11, Block A is certain and definite on its face. As noted, the Lee Ridley Subdivision does not have a Lot 11, in *Block "A."* We are reluctant to declare written instruments void where they can be made certain by reference to intention of the parties and surrounding circumstances. "That is certain which may be made certain." *McKay* v. *Lunsford,* 234 Ala. 180, 174 So. 620; *Shelley* v. *Murphy,* 234 Ala. 311, 174 So. 506; *Newell* v. *Armstrong,* 230 Ala. 367, 161 So. 244; *Aiken* v. *McMillan,* 213 Ala. 494, 106 So. 150. The facts of this case present little difficulty to a conclusion that the quit claim deed and "new" mortgage do not fail for lack of certainty of description.

The plat of Lee Ridley Subdivision No. 1 shows four Blocks, numbered A through D. Blocks A and C do not have a Lot 11. Block D shows eight lots, two of which are numbered 13, no Lot numbered 11. Block B is the only Block which contains a Lot numbered 11. The disputed description refers to the plat. On the entire plat there appears only one Lot 11. This is sufficient evidence to make the description of the property certain in the quit claim deed and "new" mortgage. There was other evidence to permit finding that the Lot which the parties intended to describe was number 11 in Block B. Under the evidence it also is shown to be the Lot in possession of the Browns and therefore the subject of the negotiations. From the verdict of the jury no other deduction would follow.

■   Mid-State says that it obtained legal title by the mortgage of March 25, 1968, and the principle of accord and satisfaction, under the evidence, cannot operate to divest it of that legal title. It further contends that such legal title in it, together with evidence that the Browns were in possession, entitles it to recover the real estate from the Browns. This is a misconception of the operative effect of the facts, under applicable principles of law, in this case.

Mid-State foreclosed the 1968 mortgage. Later it gave a quit claim deed to the Browns, at which time the Browns executed a "new" mortgage on the same property (the 1970 instruments). This, the Browns claim, worked an accord and satisfaction of the obligation secured by the 1968 mortgage, so Mid-State cannot now base an action in the nature of ejectment on legal title obtained by the 1968 mortgage. We agree to the extent that the quit claim deed and "new" mortgage served to extinguish the obligation of the Browns to Mid-State secured by the 1968 mortgage. However, divestiture of Mid-State's legal title which it obtained by the *1968 mortgage* was accomplished by its act of execution and delivery of the quit claim deed in 1970.

Was there an accord and satisfaction?

"An accord is an agreement to accept, in extinction of an obligation, something different from or less than that to which

the person agreeing to accept is claiming or entitled." Code of Ala., Tit. 9, § 1.

"Acceptance of the consideration of an accord extinguishes the obligation, and is called satisfaction." Code of Ala., Tit. 9, § 3.

Mid-State persistently argues, in brief, to the effect that, conceptually, accord and satisfaction can be no defense to its statutory ejectment action in the circumstances of this particular litigation. The argument is quite good, dialectically. It is not persuasive, because its basic premise is fallacious. It proceeds from the premise of no legal title to Lot 11, *Block A* in the Browns. Of this we have treated. Mid-State, though, goes thence to the deduction that the "new" mortgage and the quit claim deed which referred, in part, to Block *A* was no divestiture of legal title obtained by it through the 1968 mortgage and subsequent foreclosure deed which made reference to Block *B*; "mortgage" cannot refer to an obligation within the purview of Code of Ala., Tit. 9, § 2; there can be no accord because Mid-State did not agree to accept, in extinguishment of an obligation, something different from or less than that to which it was claiming or entitled (Tit. 9, § 1) ; there was no consideration accepted by Mid-State, therefore no satisfaction (Tit. 9, § 3). Learned counsel for Mid-State skillfully asserts this argument. On the surface, it appears scarcely vulnerable. Upon further examination, however, the underpinnings crumble.

Execution and delivery of the 1970 quit claim deed divested Mid-State of legal title to Lot 11, Block B. The "new" mortgage was sufficient to extinguish the obligation secured by the 1968 mortgage. The transaction in which these two instruments were executed and delivered constituted an agreement within the definition of "accord." Giving the quit claim deed, accepting the "new" mortgage and forbearing its right to immediate possession under the foreclosure deed (it was under no legal obligation to do so) was consideration sufficient to fall within the definition of "satisfaction." No reference was made in brief of Mid-State to Tit. 9, § 4 which provides a release given to the debtor by the creditor, which, if in writing may be without new consideration. The quit claim deed under all the evidence in this case could well have been considered a release.

The principles which we have discussed were enunciated in *Biggers* v. *Ingersoll*, 236 Ala. 646, 184 So. 478. The facts in *Biggers* were not in line with this case, therefore judgment for defendants there was reversed and the case remanded. We find no other decision more in point than *Biggers*.

The judgment of the circuit court is affirmed.

Affirmed.

HEFLIN, C. J., and BLOODWORTH, FAULKNER and ALMON, JJ., concur.