PITTMAN, Judge.
Felicia Williams appeals from a summary judgment entered in favor of Wells Fargo Bank, N.A. (“Wells Fargo”), by the Tuscaloosa Circuit Court (“the trial court”) in an ejectment action. We affirm.

Facts and Procedural History

In March 2005, Williams borrowed $135,945 from First Magnus Financial Corporation (“First Magnus”) in order to buy a parcel of real property located at 12340 South Pointe Drive, Moundville, which is in Tuscaloosa County (“the property”); executed a promissory note (“the note”) payable to the order of First Mag-nus in the principal amount of $135,945; and executed a mortgage (“the mortgage”) on the property naming Mortgage Electronic Registration Systems, Inc. (“MERS”), as nominee for First Magnus, as the mortgagee. The legal description of the property in the mortgage erroneously omitted the lot number of the property; however, the mortgage correctly identified the street address of the property as 12340 South Pointe Drive, Moundville. Sometime before April 21, 2005, First Magnus executed an indorsement on the note making it payable to the order of Wells Fargo, and on April 21, 2005, Wells Fargo acquired possession of the note.
Williams failed to make most of the payments that were due on the note before March 2009. Wells Fargo scheduled several foreclosure sales before January 2009 but canceled them. In March 2009, Wells Fargo scheduled a foreclosure sale for May 7, 2009, and published a notice of the May 7, 2009, foreclosure sale in a newspaper published in Tuscaloosa County once a week for three consecutive weeks before May 7, 2009. At the foreclosure sale on May 7, 2009, Wells Fargo bid $172,824.17 for the property, which was the highest bid, and the auctioneer executed a-foreclosure deed conveying the property to Wells Fargo. That same day, Wells Fargo’s counsel sent Williams a letter demanding possession of the property by certified mail; the letter was returned with a stamp indicating that it was being returned because it had been “unclaimed.”
On May 18, 2009, Wells Fargo sued Williams, stating a claim of ejectment and seeking possession of the property. When Williams failed to file an answer or otherwise defend, Wells Fargo sought and obtained an entry of default and a default judgment against Williams. Thereafter, Williams filed a motion asking the trial court to set aside the default judgment. In support of that motion, Williams filed an affidavit in which she gave the following testimony that is pertinent to the issues in this appeal:
“9. In January of 2009,1 signed a contract with FML Law Center out of Ir *819 vine, California to try to work out a loan modification agreement with my lender; I paid them a $1,000 down payment to do so.
“10. When I began receiving notices for the foreclosure I contacted FML Law Center with the understanding that they were attorneys representing my interests in [my] home.”
(Emphasis added.)
In response to Williams’s motion, the trial court entered an order setting aside the default judgment. Thereafter, Williams filed an answer to Wells Fargo’s complaint and a counterclaim. Her answer denied that Wells Fargo was entitled to possession of the property and asserted various affirmative defenses. Williams’s counterclaim stated several claims against Wells Fargo; however, only one of Williams’s claims, her breach-of-contract claim based upon Wells Fargo’s alleged breach of a contract to modify her loan, is pertinent to the issues in this appeal. Williams’s breach-of-contract claim alleged:
“19. A contract existed between [Wells Fargo] and Ms. Williams to modify her loan.
“20. Wells Fargo breached that agreement.
“21. As a result of said breach, Ms. Williams was damaged.”
After answering Williams’s counterclaim, Wells Fargo, in December 2011, filed a motion for a summary judgment with respect -to Williams’s counterclaim. In support of its motion, Wells Fargo filed an affidavit executed by Erin A. Hirzel Roesch. Roesch’s affidavit stated:
“1. My name is Erin A. Hirzel Roesch, and I am a Vice President of Loan Documentation for [Wells Fargo]. This affidavit is based upon my personal knowledge obtained from my investigation into the documents located within Wells Fargo’s loan file for [Williams].
“2. On March 29, 2005, Williams executed [the note] in favor of [First Magnus], which was secured by [the mortgage on the property]. True and correct copies of the [n]ote and [m]ort-gage are attached hereto as Exhibit A.
“3. [First Magnus] [i]ndorsed the [n]ote to Wells Fargo. See [n]ote contained in Exhibit A.
“4. Williams failed to make timely payments beginning with her July 2005 contractual due date. A true and correct copy of the [l]oan’s payment history, including all charges and debits to Williams’fe] account, is attached hereto as Exhibit B.
“5. Williams made no payments from July 1, 2005 through October 31, 2005. She made a payment on November 9, 2005, which was applied to her July 2005 payment. Williams made no payment in December 2005.
“6. Williams failed to make any payments in January, February, and March 2006. She made payments during April through July 2006. Following her July 5, 2006 payment, Williams was contractually due for her November 1, 2005 payment, meaning she was nine payments behind (exclusive of all other loan charges associated with delinquent payments).
“7. Due to Williams’[s] default, foreclosure was initiated during October 2006, with a scheduled sale date of December 7, 2006. However, this sale date was postponed due to an issue involving the [property's legal description.
“8. This issue was resolved, but when Williams failed to make any payments in 2007, the foreclosure process was resumed in December 2007. The new scheduled sale date was February 14, 2008.
*820 “9. On February 7, 2008, the foreclosure sale was placed on hold in order to work -with Williams to try to keep her in the [property. ■ But when Williams failed to communicate with Wells Fargo, ■the foreclosure process was resumed February 25, 2008.
“10.' A new foreclosure sale date was ■'set for April 24, 2008. On April 10, .2008, this foreclosure sale was .placed on hold to again work with Williams for her to, keep the [pjroperty.. On June 26, ■2008, Williams’[s] loss mitigation was denied due ⅜ Williams’[s] failure to return required documents.
“11. Though the foreclosure sale was rescheduled for August 21, 2008, Wells Fargo instead agreed to modify ,Williams’[s] loan. Williams returned the required documents on October 13,2008, and the loan modification became effective October 15,2008.
“12. Williams paid no money to Wells Fargo for this modification. After her loan was modified, she never made a payment.
“13. Following this default, the [ljoan was accelerated on March 20, 2009. A true and correct copy of the [njotice of [ajcceleration is attached hereto as Exhibit C. A foreclosure sale date of May 7, 2009 was set, and public notices ran in ■the • Tuscaloosa ' News on March 24, March 31, and April 7, 2009. True and correct copies of the public notices are -.attached hereto as Exhibit D.
- “14, Williams failed to cure the default, and the foreclosure sale was held .on May 7, 2009. Wells Fargo purchased the [pjroperty at the sale. A true and correct copy of the [fjoreelosure [djeed is attached hereto as Exhibit E.
• “15. Wells Fargo sent a demand for possession to Williams on May 7, 2009, pursuant to Alabama Code section 6-5-251 (1975). A true and correct copy of the [djemand for [pjossession is attached hereto as Exhibit F.”
Williams filed a motion to strike Roesch’s affidavit and the documents attached to it on the grounds (1) that the affidavit failed to establish that Roesch had personal knowledge of the facts recited in it and (2) that the documents attached to her affidavit were not properly authenticated by her testimony in the affidavit. In addition, Williams filed an affidavit in which she stated:
“I have personal knowledge of the matters set forth in this affidavit, and I am competent to testify about the matters set forth herein.
“I bought the property .... on March 29, 2005. At that time, I executed a promissory note with [First Magnusj. I also signed a mortgage with [MERS] as nominee for [First Magnus]. The mortgage was recorded in the probate records of Tuscaloosa County Alabama. The payment for my principal and interest on the note is $795.64. Wells Fargo was acting as the servicer of my loan. However, as far as I know, the ownership of the note and mortgage has never changed. Although I was notified that Wells Fargo would be servicing my loan, I was never notified that the note and mortgage had ever been assigned or transferred to Wells Fargo Bank.
“On or about September 1, 2006, my husband and I separated. As a result of the separation, I had a reduction in income and began having difficulty making my mortgage . payments. I began contacting the servicer of my mortgagee, Wells Fargo Bank, in November 2006 about making payment arrangements. I stayed in contact with Wells Fargo through May 7, 2009 when the foreclosure sale took place.
“I spoke to the mortgage company numerous times from November 2006 *821 through May 7, 2009 regarding a work out plan through the[ir] loss mitigation program which is required by [the United States Department of Housing and Urban Development (‘HUD’)] in order to save my home from foreclosure. They told me they would work with me and to send in a hardship letter. I sent the letter to them in December 2006; however I never heard from them. I was told by them that the foreclosure would not go forward as long as they were working with me through the loss mitigation program. I also applied several 'more time[s] for a loan modification through the loss mitigation program. I sent in all the required information, but Wells Fargo never gave me the loan modification it had promised.- Because of these communications with Wells Fargo, I was confused about the foreclosure procedure. Further, I relied upon these communications and believed that Wells Fargo was working with me to help me keep my home. I never heard from them until the day before the foreclosure sale when they advised me that the loan modification was denied. I was told' by them that the foreclosure would not go forward as long as they were working with me through the loss mitigation program only to be told the day before that I was not receiving a loan modification. Because of these communications with Wells Fargo, I believed that they were not going to foreclose until I had received the promised modification. Furthermore, I requested other assistance from them available through the loss mitigation program, but was denied any assistance at all. I was never offered a repayment plan, a moratorium, forbearance, deed in lieu of foreclosure, or a partial claim. Those programs are available through the HUD mandated loss mitigation program, but I was not offered any assistance from the mortgage company available pursuant to those programs.
“My mortgage contract prohibits the mortgage company from foreclosing against me if they violate HUD rules and regulations. They did not follow HUD rules and regulations by failing to work with me through the loss mitigation program. Specifically, the lender did not provide me with a copy of the HUD publication PA 426-H, May 19, 1997, How to Avoid Foreclosure[,] [a]s required by 24 CFR 203.602. In addition, [Wells Fargo] did not use reasonable means to address my delinquency, failed to inform me of available loss mitigation options and the availability of housing counseling within the second month of delinquency, and failed to utilize loss mitigation to avoid foreclosing on my home. I never received any letters from [Wells Fargo] about options to prevent foreclosure. Furthermore, the mortgage company never made any arrangement with me for an in person meeting nor gave me any reason why they could not meet with me to discuss my option to avoid foreclosure because of my mortgage delinquency.
“Moreover, I never was provided any notice of intent to accelerate, any actual acceleration notice, or notice of sale which were required by my mortgage agreement. I was not given the opportunity to cure the alleged default nor could I obtain the information necessary to cure the alleged default or said foreclosure sale. [Wells Fargo] wrongfully foreclosed and attempted to purchase for itself my property on May 7, 2009, without giving me a proper acceleration notice of the default and opportunity to cure that default.
“I have [a Federal Housing Administration ‘FHA’)] mortgage. My FHA mortgage contract prohibits the mort *822 gage company from foreclosing against me if they violate HUD rules and regulations. They did not follow HUD rules and regulations by failing to work with me through the loss mitigation program. Specifically, the lender did not provide me with a copy of the HUD publication PA 426-H, May 19, 1997, How to Avoid Foreclosure[,] [a]s required by 24 CFR 203.602. In addition, [Wells Fargo] did not use reasonable means to address my delinquency, failed to inform me of available loss mitigation options and the availability of housing counseling within the second month of delinquency, and failed to utilize loss mitigation to avoid foreclosing on my home. I never received any letters from [Wells Fargo] about options to prevent foreclosure. Furthermore, the mortgage company never made any arrangement with me for an in person meeting nor gave me any reason why they could not meet with me to discuss my option to avoid foreclosure because of my mortgage delinquency.
“Failure to set aside this foreclosure sale would render a harsh result on me and my two children due to my financial situation. I want to keep this property.”
In addition, Williams submitted a brief in opposition to Wells • Fargo’s summary-judgment motion.
Wells Fargo filed a motion to strike Williams’s affidavit on the grounds (1) that it contained inadmissible hearsay and (2) that it contained testimony that violated the Statute of Frauds. See § 8-9-2, Ala. Code 1975. Thereafter, the trial court granted Wells Fargo’s summary-judgment motion, which, as noted, addressed only Williams’s counterclaim, without ruling on either Williams’s motion to strike Roesch’s affidavit or Wells Fargo’s motion to strike Williams’s affidavit. Williams then appealed; however, this court dismissed the appeal because the order appealed from was neither a final judgment nor an order that was appropriate for certification as a final judgment pursuant to Rule 54(b), Ala. R. Civ. P. Williams v. Wells Fargo Bank, N.A. (No. 2120160, April 16, 2014), 187 So.3d 813 (Ala.Civ.App.2014) (table).
In May 2014, Wells Fargo moved for a summary judgment with respect to its ejectment claim against Williams. Wells Fargo supported this second summary-judgment motion with the same affidavit of Roesch that it had filed in support of its first summary-judgment motion. Williams again filed a motion to strike Roesch’s affidavit and the same affidavit she had filed in opposition to the first summary-judgment motion. Wells Fargo again filed a motion to strike Williams’s affidavit on the grounds (1) that it contained hearsay and (2) that it contained testimony that violated the Statute of Frauds. See § 8-9-2. Williams filed a brief in opposition to Wells Fargo’s summary-judgment motion and requested an opportunity to depose Roesch before the trial court heard the summary-judgment motion. The trial court granted Williams’s request; thereafter, Williams deposed Roesch and filed the entire transcript of Roesch’s deposition in opposition to Wells Fargo’s summary-judgment motion without moving to strike any of the testimony in her deposition.
Following a hearing, the trial court granted Wells Fargo’s summary-judgment motion without ruling on Williams’s motion to strike Roesch’s affidavit or Wells Fargo’s motion to strike Williams’s affidavit. Williams then filed a postjudgment motion in which she requested an opportunity to present oral argument; however, the trial court denied Williams’s motion without holding a hearing. Williams then appealed, and the supreme court transferred her appeal to this court pursuant to § 12-2-7(6), Ala.Code 1975.

*823
Standard of Review

“[An appellate court’s] review of a summary judgment is de novo. Williams v. State Farm Mut. Auto. Ins. Co., 886 So.2d 72, 74 (Ala.2003). [An appellate court] applies] the same standard of review as the trial court applied. Specifically, [the appellate court] must determine whether the movant has made a prima facie showing that no genuine issue of material fact exists and that the movant is entitled to a judgment as a matter of law. Rule 56(c), Ala. R. Civ. P.; Blue Cross & Blue Shield of Alabama v. Hodurski, 899 So.2d 949, 952-53 (Ala.2004). In making such a determination, [the appellate court] must review the evidence in the light most favorable to the nonmovant. Wilson v. Brown, 496 So.2d 756, 758 (Ala.1986). Once the movant makes a prima facie showing that there is no genuine issue of material fact, the burden then shifts to the nonmovant to produce ‘substantial evidence’ as to the existence of a genuine issue of material fact. Bass v. SouthTrust Bank of Baldwin County, 538 So.2d 794, 797-98 (Ala.1989); Ala. Code 1975, § 12-21-12. ‘[Substantial evidence is evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.’ West v. Founders Life Assur. Co. of Fla., 547 So.2d 870, 871 (Ala.1989).”
Dow v. Alabama Democratic Party, 897 So.2d 1035, 1038-39 (Ala.2004).

Analysis

On appeal, Williams raises nine issues, which we will address in the following order: (1) whether the trial court erred in failing to strike Roesch’s affidavit; (2) whether Wells Fargo had the right to exercise the power of sale in the mortgage; (3) whether Williams established a genuine issue of material fact regarding whether Wells Fargo failed to give Williams notice of default, notice of acceleration, and notice of the foreclosure sale; (4) whether Wells Fargo’s alleged failure to comply with federal loss-mitigation regulations constituted a defense to Wells Fargo’s ejectment claim; (5) whether Williams stated a claim of breach of contract based on Wells Fargo’s alleged failure to comply with federal loss-mitigation regulations; (6) whether Wells Fargo’s alleged misrepresentation that it would not foreclose until Williams had been notified of the results of her loss-mitigation application constituted a defense to Wells Fargo’s ejectment claim; (7) whether Williams had an estop-pel defense to Wells Fargo’s ejectment claim based on Wells Fargo’s alleged misrepresentation that it would not foreclose until Williams had been notified of the results of her loss-mitigation application; (8) whether the omission of the lot number of the property from its legal description in the mortgage rendered the foreclosure void; and (9) whether the trial court committed reversible error by denying Williams’s postjudgment motion without holding a hearing regarding that motion.
I. Whether the Trial Comt Erred in Failing to Strike Roesch’s Affidavit
As noted above, Williams filed Roesch’s deposition testimony in its entirety without moving to strike any of the testimony contained therein, which authorized the trial court to consider that testimony regardless of whether it would have been proper to strike it if a motion to strike had been filed. See Ex parte Secretary of Veterans Affairs, 92 So.3d 771, 777 (AIa.2012) (holding that a party must move to strike objectionable testimony in order to preclude its consideration by the trial court in ruling on a summary-judgment motion); and Ex parte Elba Gen. Hosp. & *824 Nursing Home, Inc., 828 So.2d 308, 312 (Ala.2001). In Ex paite Elba General Hospital, our supreme court stated:
“On the question whether a trial court should consider a defective affidavit introduced in support of a motion for summary judgment and not objected to by the opposing party, we have consistently held that a failure to object constitutes a waiver of the right to object to the affidavit and that in the absence of an objection the trial court may properly consider such an affidavit, even if an objection alleging the particular defect would clearly have been proper.”
828 So.2d at 312 (emphasis added). In her deposition testimony, Roesch reiterated all the testimony contained in her affidavit. Because Williams waived any objection to Roesch’s deposition testimony by failing to move to strike any of it, she waived any objection she might have had to that testimony. See Ex parte Secretary of Veterans Affairs and Ex parte Elba General Hospital. Moreover, by allowing the trial court to consider Roesch’s deposition testimony, which reiterated all the testimony in her affidavit, Williams rendered harmless any error the trial court may have committed in failing to strike Roesch’s affidavit. See Rule 45, Ala. R.App. P. (providing that a judgment may not be reversed on the ground of the improper admission of evidence unless it injuriously affected the substantial rights of the party who opposed its admission). Accordingly, the trial court did not commit reversible error in failing to strike Roesch’s affidavit.
II. Whether Wells Fargo Had the Right to Exercise the Power of Sale
In her deposition, Roesch testified that Wells Fargo’s business records established that it acquired possession of the note on April 21, 2005, and that, when Wells Fargo acquired possession of the note on that date, it already bore First Magnus’s indorsement making the note payable to the order of Wells Fargo.
Under Alabama law, the note is a negotiable instrument, which makes it subject to Alabama’s version of the Uniform Commercial Code. See § 7-3-104, Ala.Code 1975; and Thomas v. Wells Fargo Bank, N.A., 116 So.3d 226, 233 (Ala.Civ.App.2012). In pertinent part, § 7-1-201(b)(21)(A), Ala.Code 1976, provides that the term “holder” means “[t]he person in possession of a negotiable instrument that is payable ... to an identified person that is the person in possession.,.. ” Thus, because Wells Fargo acquired possession of the note, which was made payable to Wells Fargo by First Magnus’s indorsement, on April 21, 2005, it became the holder of the note as of that date. Section 7-3-301, Ala.Code 1975, provides that a holder of a negotiable instrument is entitled to enforce it. Moreover, § 35-10-12, Ala.Code 1975, provides that any person entitled to the money secured by a mortgage is entitled to exercise the power of sale in the mortgage. See Perry v. Federal Nat’l Mortg. Ass’n, 100 So.3d 1090, 1095 (Ala.Civ.App.2012). Consequently, because Wells Fargo became the holder of the note as of April 21, 2005, and was still the holder of the note on the date of the foreclosure sale, it had the right to exercise the power of sale when the foreclosure sale was held.
III. Whether Williams Established a Genuine Issue of Material Fact Regarding Whether Wells Fargo Failed to Give Williams Notice of Default, Notice of Acceleration, and Notice of the Foreclosure Sale
In pertinent part, § 35-10-13, Ala. Code 1975, provides that “[njotice of all [foreclosure sales] shall be given by publication once a week for three successive weeks in a newspaper published in the county ... in which such land is located.” *825 It is undisputed that Wells Fargo complied with this Code section. Neither the. Alabama Code nor the provisions of the mortgage at issue in this appeal required Wells Fargo to give Williams notice of default or of acceleration of the maturity of the debt, and Williams has not cited any legal authority standing for the proposition that a mortgagee is required to give a mortgagor notice of default and notice of acceleration in the absence of a provision in the mortgage requiring such notice. Therefore, any evidence tending to prove that Wells Fargo failed to give Williams notice of default and notice of acceleration would not have created a genuine issue of material fact precluding the granting of Wells Fargo’s summary-judgment motion. See Gilmore v. Shell Oil Co., 613 So.2d 1272, 1274 (Ala.1993) (“A ‘genuine issue of material fact’ is a disputed factual issue that is ‘outcome determinative.’ ‘A fact is outcome determinative if the resolution of that fact [before the trial court] will establish or eliminate a claim or defense....’” (quoting John J. Coleman III, Summary Judgment in Alabama: The Nuances of Practice Under. Rule 56, 20 Cumb. L.Rev. 1,5(1989))).
In addition to the statutory requirement that Wells Fargo give notice of the foreclosure sale by publication once a week for three successive weeks in a newspaper published in Tuscaloosa County, the mortgage required Wells Fargo to give Williams a copy of the notice of the foreclosure sale by mailing it to her at the address of the property. Although Williams testified in the affidavit she filed in opposition to Wells Fargo’s summary-judgment motions that she had not received notice of the foreclosure, that testimony directly contradicted her testimony in the affidavit she had filed in support of her motion to set aside the default judgment in which she stated that “[wjhen [she had begun} receiving notices for the foreclosure [she had] contacted FML. Law Center with the .understanding..that they were attorneys representing .[her] -interests in [her] home.” (Emphasis added.) The Alabama appellate courts have;held that a party may not avoid- a summary judgment by directly contradicting, prior sworn testimony. See, e.g., Hines v. Trinity Contractors, Inc., 154 So.3d 1014, 1021-23 (Ala.Civ.App.2014). Williams’s testimony in her affidavit in support of her motion to set aside the default judgment established that she had received notice of the foreclosure sale in accordance, with,the notice provision of the mortgage. Therefore, Williams failed to. establish a genuine issue of material fact regarding whether she was given notice of-.the foreclosure sale.
IV. Whether Wells Fargo’s .Alleged Failure to Comply with federal Loss-Mitigation Regulations Constituted, a Defense to Wells Fargo’s Ejectment Claim
• This court has specifically held that a mortgagee’s failure-to comply with federal loss-mitigation regulations cannot be. asserted as a defense in an ejectment action. In Campbell v. Bank of America, N.A., 141 So.3d 492, 494-96 (Ala.Civ.App.2012), this court stated:
“The Campbells argued: in the circuit court and they now maintain on appeal .-.that Bank .of America’s alleged noncompliance with [United States Department of Housing and Urban Development] loss-mitigation alternatives, to foreclosure constitutes a defense to a,foreclosure action. An ejectment action, following a nonjudicial foreclosure, however, is not a ‘foreclosure action,’ and. a defense in such an action asserting errors in the foreclosure .process is a collateral attack on a foreclosure. See Dewberry v. Bank of Standing Rock, 227 Ala. 484, 493, 150 *826 So. 463, 470 (1933) (characterizing the action in Jones v. Hagler, 95 Ala. 529, 10 So. 345 (1891), in which the plaintiff sought possession of certain property he had purchased from a trustee, who had sold the property pursuant to a power of sale in a deed of trust, and in which the defendant had asserted irregularities in the sale, as ‘a statutory action in the nature of ejectment—an indirect or collateral attack upon the foreclosure of real and personal property sold by a trustee, under the power [of sale in a deed of trust]’ (some emphasis in original; some emphasis added)). Accord Pinkert v. Lamb, 215 Ark. 879, 883, 224 S.W.2d 15, 17 (1949) (stating that an ejectment action is a ‘collateral attack by appellees on the ... foreclosure decree and sale ..., and the burden [is] on them to prove such defects therein as would render the sale and decree void’); Dime Sav. Bank, FSB v. Greene, 2002 Pa.Super. 392, 813 A.2d 893, 895 (2002) (stating that ‘[a]n ejectment action is a proceeding collateral to that under which the land was sold’ and that, Vhere it is claimed that [an] underlying default judgment [in a judicial-foreclosure action] is merely voidable, that claim will not be entertained because such a judgment can not be reached collaterally’).
“In a direct attack on a foreclosure— that is, an action seeking declaratory and injunctive relief to halt the foreclosure sale before it occurs[,] see, e.g., Ferguson v. Commercial Bank, 578 So.2d 1234 (Ala.1991); Bank of Red Bay v. King, 482 So.2d 274 (Ala.1985); and Woods v. SunTrust Bank, 81 So.3d 357 (Ala.Civ.App.2011), or an action to set aside the sale after it has occurred, see, e.g., Beal Bank, SSB v. Schilleci, 896 So.2d 395 (Ala.2004); Kelly v. Carmichael, 217 Ala. 534, 536, 117 So. 67, 69 (1928); and Browning v. Palmer, 4 So.3d 524 (Ala.Civ.App.2008)—any circumstance in the foreclosure process that would render the foreclosure sale void or voidable may be asserted. In a proceeding involving a collateral attack on a foreclosure, however, only those circumstances that would render the foreclosure sale void may be raised as an affirmative defense.
“ ‘[T]he true distinction between void and voidable acts, orders, and judgments, is, that the former can always be assailed in any proceeding, and the latter, only in a direct proceeding.’ Alexander v. Nelson, 42 Ala. 462, 469 (1868). See, e.g., Carlton v. Owens, 443 So.2d 1227, 1231 (Ala.1983) (stating that ‘[t]he only remedy available to a defendant subject to a voidable judgment is a direct appeal from that judgment; a collateral attack is not allowed’); City of Dothan v. Dale Cnty. Comm’n, 295 Ala. 131, 324 So.2d 772 (1975) (holding that, because city’s annexation of county land was, at most, voidable, opponents could not attack the annexation in a collateral proceeding); 23 Am.Jur.2d Deeds § 162 (2002) (stating that ‘[a] voidable deed must be attacked, if at all, directly, but a deed that is void may be collaterally attacked by anyone whose interest is adversely affected by it’ (footnote omitted)).
[[Image here]]
“... Because an ejectment action following a nonjudicial foreclosure is not a judicial-foreclosure action, or an action for injunctive relief to forestall a foreclosure, or an action to set aside a foreclosure sale, the Campbells may not assert Bank of America’s alleged failure to comply with loss-mitigation procedures as a defense in an ejectment proceeding.”
(Last emphasis added.) See also Walker v. North American Sav. Bank, 142 So.3d *827 590, 598 (Ala.Civ.App.2013) (“[T]his court has determined that any alleged failure to comply with loss-mitigation procedures does not constitute a valid defense to an ejectment action following a nonjudicial foreclosure.”); Perry v. Federal Natl Mortg. Ass’n, 100 So.3d at 1101 (“‘[T]he failure of a foreclosing entity to comply with [United States Department of Housing and Urban Development] or [United States Department of Veterans Affairs] loss-mitigation requirements may not be raised as a defense to an ejectment action following a nonjudicial foreclosure.’ ” (quoting Coleman v. BAC Servicing, 104 So.3d 195, 206 (Ala.Civ.App.2012))). Thus, because any alleged failure of Wells Fargo to comply with federal loss-mitigation regulations would merely render the foreclosure voidable rather than void, Williams was precluded from asserting that alleged failure as a defense to Wells Fargo’s ejectment claim. Id.
V. Whether Williams Stated a Claim of Breach of Contract Based on Wells Fargo’s Alleged Failure to Comply with Federal Loss-Mitigation Regulations
Williams did not plead a breach-of-contract claim based on Wells Fargo’s alleged failure to comply with federal loss-mitigation regulations; the only breach-of-contract claim she pleaded was based on an allegation that Wells Fargo had breached a loan-modification agreement. Pleadings cannot be amended pursuant to Rule 15(b), Ala. R. Civ. P., based on arguments made in connection with a summary-judgment proceeding because a summary-judgment proceeding does not constitute a trial on the merits. See Rector v. Better Houses, Inc., 820 So.2d 75, 79 (Ala.2001). In Rector, our supreme court stated:
“Rule 15(b), Ala. R. Civ. P., states, in pertinent part:
“ ‘When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings.... If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the admission of such evidence would prejudice the party in maintaining the party’s action or defense upon the merits. The court may grant a continuance to enable the objecting party to meet such evidence.’
“(Emphasis added.) The summary-judgment context is different from the situation where an unpleaded [claim] has been tried on the merits without objection, because, at the summary-judgment stage of litigation, there has been no trial before a fact-finder. A summary-judgment motion simply tests the merits of a case. See Champ Lyons, Jr., Alabama Rules of Civil Procedure Annotated, § 56.2 (3d ed.1996). If a court finds those merits lacking, then it properly adjudicates it. While such an adjudication under this scenario is an adjudication on the merits, the adjudication is not the product of a trial on the merits. Thus, where there is no trial, Rule 15(b) cannot apply. See Blue Cross & Blue Shield of Alabama v. Weitz, 913 F.2d 1544, 1549 (11th Cir.1990) (stating, in dictum, that Rule 15(b), Fed.R.Civ.P., the relevant portion of which is identical to Alabama’s Rule 15(b), is inapplicable at the summary-judgment stage because that stage does not involve a trial).”
820 So.2d at 79. Accordingly, Williams failed to state a breach-of-contract claim *828 premised upon an alleged breach of the mortgage provisions requiring Wells Fargo to mitigate Williams’s loss because she did not plead such a claim.
VI. "Whether Wells Fargo’s Alleged Misrepresentation That It Would Not Foreclose Until Williams Had Been Notified of the Results of Her Loss-Mitigation Application Constituted a Defense to Wells Fargo’s Ejectment Claim
; In pertinent part, Alabama’s Statute of Frauds, § 8-9-2, Ala.Code 1975, provides:
“In the following • cases, every agreement is: void unless such agreement or some note or memorandum thereof expressing the consideration is in writing and • subscribed by . the party to be charged therewith or some other person by him thereunto lawfully authorized in writing:

: ,6i ■ '

■' “(7) Every agreement or commitment to lend money, delay or forbear repayment thereof or to modify the provisions of such an agreement or commitment except for consumer loans with a principal amount financed less than $25,000.”
(Emphasis added.).
Wells Fargo moved to strike Williams’s affidavit on the ground that it contained testimony that violated the Statute of Frauds. See § 8-9-2. Insofar as Williams testified in her affidavit regarding alleged- oral misrepresentations by Wells Fargo to the effect that Wells Fargo would not foreclose until'she had been notified of the results of her loss-mitigation application, her affidavit violated the Statute. of Frauds and, thus, that testimony was due to be stricken. See Coleman, 104 So.3d at 207. In Coleman, the mortgagee had-moved to strike testimony in the ^mortgagor’s affidavit in opposition to the. mortgagee?s summary-judgment motion regarding an alleged misrepresentation made1 by the mortgagee that the foreclosure would not go forward as long as the mortgagee was working with her through the loss-mitigation program. The Jefferson Circuit Court had granted the mortgagee’s summary-judgment motion without ruling on the mortgagee’s motion to strike. We stated:
“ ‘While the trial court did not rule on [BAC’s] motion to strike [Coleman’s] affidavit, [BAC] was entitled to an order striking [Coleman’s] ... statement.’ Kingvision Pay-Per-View, Ltd. v. Ayers, 886 So.2d 45, 57 (Ala.2003). See also Haygood v. Wesfam Rests., Inc., 675 So.2d 1312, 1314 (Ala.Civ.App.1996), overruled on other grounds, Rothenberger v. Cast Prods., Inc., 716 So.2d 1220, 1224 (Ala.Civ.App.1997) (stating, that ‘[t]he motion to strike was not ruled upon by the trial court; however, because the deficiencies of the affidavit were brought to that court’s attention, they are properly subject to our review’).”
104 So.3d at 207. Therefore, in the case now before us,, because Wells Fargo moved to strike Williams’s affidavit on the ground, among others, that it contained testimony that violated the Statute of Frauds and because that motion was due to be granted insofar as Williams testified that Wells Fargo had represented that it would not foreclose until Williams had been notified of the results of her loss-mitigation application, we will consider that portion of Williams’s affidavit stricken for purposes of our review of the trial court’s judgment. Id, With that testimony stricken, the record does not contain any evidence to support Williams’s argument that she has a misrepresentation defense to Wells Fargo’s ejectment action.
*829 VII. Whether Williams Had an Estop-pel Defense to Wells Fargo’s Ejectment Claim
Williams argues that she had an estop-pel defense to Wells Fargo’s ejectment claim based on the same alleged misrepresentation upon which she bases her argument that she had a misrepresentation defense. However, because, as discussed above, we consider her testimony regarding that alleged misrepresentation to be stricken for purposes of our review of the trial court’s judgment, the record does not contain any evidence to support Williams’s argument that she had an estoppel defense to Wells Fargo’s ejectment claim. Id.
VIII. Whether the Omission of the Lot Number of the Property from Its Legal Description in the Mortgage Rendered the Foreclosure Void
Williams argues that the foreclosure was void because of an error in the legal description of the property in the mortgage. The legal description of the property in the mortgage was:
“Lot South Pointe, Phase 1, a map or plat of which is recorded at Plat Book 2003 at Page 116, in the Probate Office of Tuscaloosa County, Alabama, reference to which is hereby made in aid of and as a part of this description. Source of title: deed executed October 23, 2003 from Northport Builders Group, L.L.C. to J.T.L.L.C., as recorded in Deed Book 2003 at page 20138 in said probate office.”
Aside from the omission of the number “10” following the word “Lot,” the legal description is correct.
In Frazier v. Malone, 387 So.2d 145 (Ala.1980), Frazier had mortgaged his land to Malone to secure the payment of a note payable to Malone. When Frazier subsequently defaulted on the note, Malone held a foreclosure sale and bought Frazier’s land at the sale. Thereafter, Malone brought an ejectment action against Frazier and obtained a default judgment against him in that action. Frazier then brought an action seeking to have the default judgment in the ejectment action set aside on the ground, among others, that the legal description of the land in the mortgage was erroneous and, therefore, the mortgage, the foreclosure, and the ejectment were void. After the Jefferson Circuit Court entered a judgment in favor of Malone, Frazier appealed. Affirming the Jefferson Circuit Court’s judgment, our supreme court stated:
“Because of an alleged discrepancy between the description of the property in the mortgage and the description of it in the foreclosure deed, [Frazier] contends the mortgage and therefore the foreclosure and ejectment are invalid. According to Frazier the property he actually owned is described as follows:
“ ‘Lot 20, Block 46, according to the survey of East Birmingham, as recorded in Map Book 1, Page 7, in the Office of the Judge of Probate of Jefferson County, Alabama.’
“In the mortgage to Malone, and in the foreclosure deed, the real estate is described as follows:
“ ‘Lot 20, Block 46, according to the First Addition to East Birmingham, as recorded in the Office of the Judge of Probate of Jefferson County, Alabama.’
“In addition to this latter description, the complaint in the ejectment action stated the street address of Frazier’s property: 1101 Coosa Street, Birmingham, Alabama,
“In Mid-State Homes, Inc. v. Brown, 294 Ala. 242, 314 So.2d 83[6] (1975), this court articulated its reluctance to declare written instruments void because of misdescription where they can be *830 made certain by reference to intention of the parties and surrounding circumstances.
“The evidence before the [Jefferson Circuit Court] was clearly sufficient to support the conclusion that the property description in the mortgage referred to Frazier’s property and was not invalid. Frazier testified 'that the description in the mortgage and note was of his house and that negotiations concerning the transaction involved his house. Under the circumstances the description is sufficient both in the mortgage and in the ejectment action. See Myers v. Ellison, 249 Ala. [3]67, 31 So.2d 353 (1947); Karter v. East, 220 Ala. 511, 125 So. 655 (1929).”
387 So.2d at 148-49.
In the action now before us, Williams never disputed that the property subject to the mortgage was the property with the street address of 12340 South Pointe Drive, Moundville. In addition to describing the land subject to the mortgage with a legal description, the mortgage described it with its street address of 12340 South Pointe Drive, Moundville. Moreover, the legal description in the mortgage provided the recording data of the deed from which Williams derived her title and from which the correct legal title could be ascertained. Accordingly, we conclude that the description of the property in the mortgage was sufficient and that the omission of the lot number from the legal description of the property in the mortgage did not render the mortgage or the foreclosure void. See Frazier.
IX. Whether the Trial Court Committed Reversible Error by Denying Williams’s Postjudgment Motion Without Holding a Hearing Regarding That Motion
Rule 59(g), Ala. R. Civ. P., provides that a posttrial motion “shall not be ruled upon until the parties have had opportunity to be heard thereon.” Although it is error for a trial court to deny a postjudgment motion without holding a hearing if the movant has requested a hearing, it is not necessarily reversible error. See Greene v. Thompson, 554 So.2d 376, 380-81 (Ala.1989).
“Harmless error occurs, within the context of a Rule 59(g) motion, where there is either no probable merit in the grounds asserted in the motion, or where the appellate court resolves the issues presented therein, as a matter of law, adversely to the movant, by application of the same objective standard of review as that applied in the trial court.”
Greene, 554 So.2d at 381. In this opinion, we have resolved all the issues presented in Williams’s postjudgment motion adversely to her as a matter of law. Therefore, the trial court’s error in denying Williams’s postjudgment motion without a hearing was harmless error. See Greene.
For the reasons discussed above, we affirm the judgment of the trial court.
AFFIRMED.
MOORE, J., concurs.
THOMPSON, P.J., and THOMAS, J., concur in the result, without writings.
DONALDSON, J., recuses himself.